**Paul K. RADITCH,**
**Plaintiff-Counter-Defendant-Appellant,**

v.

**UNITED STATES of America,**
**Defendant-Counter-Claimant-Appellee.**

No. 89–15698.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 17, 1990.

Decided March 26, 1991.

Judith Lazenby, Stephenson & Lazenby, Chula Vista, Cal., for plaintiff-counter-defendant-appellant.

Joann M. Swanson, Asst. U.S. Atty., San Francisco, Cal., Larry F. Gottesman, U.S. Dept. of Labor, Washington, D.C., for defendant-counter-claimant-appellee.

Before CHOY, WIGGINS and LEAVY, Circuit Judges.

WIGGINS, Circuit Judge:

Paul K. Raditch appeals the district court's denial of a writ of mandamus, the dismissal of his complaint, and the award of summary judgment against him on the Government's counterclaim. This court has jurisdiction of the timely appeal. 28 U.S.C. § 1291. We affirm.

## BACKGROUND

Mr. Raditch injured his back in 1974 while working as a clerk-machine operator for the United States Postal Service. He was placed on the automatic rolls for disability payments and told that he should seek suitable work and report any earnings to the Office of Workers' Compensation Programs (OWCP). Mr. Raditch worked as a retail liquor clerk from December 1977 to August 1978, as a truck driver and warehouseman from August 1978 to October 1978, and as a shill at a card table for a casino from June 1982 to March 1983. However, he did not report this employment on forms he returned to the OWCP in 1978, 1979, 1980, and 1982. He either left the section on employment blank or answered "none" or "N/A".

An investigation by the Office of Inspector General (OIG) led to the discovery of Mr. Raditch's unreported income. The OWCP determined that Mr. Raditch was no longer disabled and, without notice, terminated his benefits effective May 17, 1984. Mr. Raditch received a letter in August 1984 stating that he had forfeited part of his benefits already paid because of unreported earnings and that his continuing compensation was rejected for the same reason. He requested a hearing and on February 21, 1985, a hearing officer vacated the termination order because the OWCP had not followed proper procedures in determining that Mr. Raditch was no longer entitled to compensation. The hearing officer's order directed Mr. Raditch to reapply for benefits. He refused to do so and has maintained throughout the proceedings culminating in this appeal that he should not be required to reapply for benefits; his position is that they should be automatically reinstated.

Through a series of decisions, the Department of Labor determined that Mr. Raditch owes the Department $30,656.75 plus interest for compensation received while he was employed. Mr. Raditch declined the Department's invitation to participate in the proceedings focusing on that aspect of his case in a timely manner.

In February 1988, Mr. Raditch filed suit in the United States District Court for the Northern District of California, seeking relief for the alleged due process violation in the termination of his benefits, and filed an application for an order to show cause why a writ of mandamus should not issue to compel the Secretary of Labor to carry out its February 21, 1985 order by automatically reinstating his benefits. The district court denied his application, holding that the order directed Mr. Raditch to reapply for benefits and that no due process violation had occurred. The Secretary filed a counterclaim for the amount she had determined Mr. Raditch owed the Department. On April 24, 1989, the district court granted summary judgment for the Secretary on her counterclaim and dismissed Mr. Raditch's complaint. On May 24, 1989, Mr. Raditch appealed the district court's decisions to this court.

## DISCUSSION

■ In seeking a writ of mandamus to compel the Secretary of Labor to reinstate his disability payments, Mr. Raditch argued that the termination of his benefits without notice violated due process and that, therefore, those benefits should be promptly reinstated as of the date of termination. Mr. Raditch also argued that the OWCP's February 21, 1985 order vacating the termination of his benefits required automatic reinstatement of these benefits. The district court denied the motion for a writ of mandamus because it disagreed that the order compelled automatic reinstatement and it did not believe that Mr. Raditch's due process rights had been violated.[1] We agree with the district court that the memorandum accompanying the order was part of the order. The memorandum clearly required Mr. Raditch to reapply for benefits, not that benefits would be automatically reinstated. We also agree that Mr.

---

1. The district court correctly noted that without the constitutional claim, it had no jurisdiction to review the decision of the Employees' Compensation Appeals Board (ECAB). *See Rodrigues v. Donovan,* 769 F.2d 1344, 1348 (9th Cir. 1985); 5 U.S.C. § 8128(b).

Raditch's due process rights were not violated.

In *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) (holding that a teacher hired for a fixed term did not have a property interest in employment after the term expired), the Supreme Court discussed the characteristics of a property interest that is protected by the due process clauses of the Constitution:

> Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Id.* at 577, 92 S.Ct. at 2709. Welfare recipients possess a property interest that cannot be terminated without due process, *Goldberg v. Kelly,* 397 U.S. 254, 262, 90 S.Ct. 1011, 1017, 25 L.Ed.2d 287 (1970), as do recipients of Social Security disability benefits, *Mathews v. Eldridge,* 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976), and municipal disability benefits, *Knudson v. Ellensburg,* 832 F.2d 1142, 1144–45 (9th Cir.1987). The disability payments for federal employees at issue in this case cannot be distinguished from the property interests that were protected by due process in these other cases. Claims of entitlement to federal disability payments are secured through laws passed by Congress, 5 U.S.C. §§ 8101–8193, and therefore, entitlement to the benefits cannot be taken away without due process.

When a government-created property interest is at stake, due process principles require at least notice and an opportunity to respond in some manner, whether in writing or at an oral hearing, before termination of that interest. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 546, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985); *see Sauceda v. Department of Labor & Indus. of Wash.,* 917 F.2d 1216, 1219 (9th Cir.1990) (opportunity to communicate in writing before suspension of state disability payments was sufficient pretermination process). In some circumstances, the property interest can be terminated after only minimal interaction between the claimant and the government regarding the proposed termination, as long as appropriate evidentiary hearings come later. *Mathews,* 424 U.S. at 333–35, 96 S.Ct. at 901–03 (social security disability payments); *Sauceda,* 917 F.2d at 1219 (state disability payments); *Knudson,* 832 F.2d at 1148–49 (same).

The OWCP has procedures that more than adequately provide due process to claimants whose disabled status may be changed or terminated. These procedures require that specific medical evidence regarding a claimant's current condition, as well as any work history, be gathered before prospective benefits can be terminated. *Raditch v. McLaughlin,* No. C–88–20081 WAI, Declaration of Donna Onodera Attachment 3, Feb. 21, 1985 OWCP Memo and Order (N.D.Cal. March 21, 1988). Unfortunately, these procedures were not followed in Mr. Raditch's case. In May, 1984, someone in the OWCP decided to terminate Mr. Raditch's benefits without giving him notice and an opportunity to respond, and without following the OWCP's procedures for gathering the requisite medical evidence. That decision was unauthorized and in violation of the established procedures.

However, because the deprivation of Mr. Raditch's benefits resulted from the unauthorized act of a government official in violation of the OWCP procedures, and adequate postdeprivation remedies for the violation exist, Mr. Raditch received all the process that was due. In *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), the Supreme Court held that an intentional deprivation of a property right by a government official, in violation of established procedures, is a random and unauthorized act that cannot be prevented by predeprivation process. *Id.* at 533, 104 S.Ct. at 3203 (intentional destruction of prisoner's personal property during search

of his cell).[2] In such circumstances, the deprivation "does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Id.; see also Parratt v. Taylor,* 451 U.S. 527, 544, 101 S.Ct. 1908, 1917, 68 L.Ed.2d 420 (1981). The Court emphasized that "[w]hether an individual employee himself is able to foresee a deprivation is simply of no consequence. The controlling inquiry is solely whether the state is in a position to provide for predeprivation process." *Hudson,* 468 U.S. at 534, 104 S.Ct. at 3204. Although *Hudson* involved § 1983 and the Fourteenth Amendment, the same due process principles apply to the federal government through the Fifth Amendment. *See Weiss v. Lehman,* 676 F.2d 1320 (9th Cir.1982), *cert. denied,* 459 U.S. 1103, 103 S.Ct. 725, 74 L.Ed.2d 951 (1983).[3]

As in *Hudson* and *Parratt,* no predeprivation procedure could have prevented the unauthorized violation of the OWCP's established procedures in this case.[4] The Government was able to address the error only after it occurred. In February, 1985, an OWCP hearing officer recognized the error, vacated the termination order, and remanded for a de novo determination of Mr. Raditch's disability status. In March, 1985, the OWCP sent Mr. Raditch a letter requesting the past and present employment information that it needed to help make an accurate determination of his status. He did not respond. In May, the OWCP sent another letter explaining that it needed the information to determine his entitlement to compensation and that he must respond within thirty days. Again, Mr. Raditch did not respond. He has maintained since that time that he should not be required to submit any information to have his benefits reinstated; he argues that because they were terminated wrongfully, they should be reinstated automatically.

■ Mr. Raditch misunderstands his due process rights. A violation of procedural rights requires only a procedural correction, not the reinstatement of a substantive right to which the claimant may not be entitled on the merits.[5] Here, the OWCP

---

**2.** In *Hudson,* the Supreme Court extended the due process principles previously articulated in *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), for negligent deprivation of property to situations involving intentional deprivations of property. *Parratt* involved the negligent loss of a prisoner's mail—a "random and unauthorized" result of the negligent violation of established procedures. *Id.* at 541, 543, 101 S.Ct. at 1916.

**3.** *Weiss* was a Fifth Amendment due process case decided after remand from the Supreme Court. The Court had instructed the Ninth Circuit to reconsider its decision in light of *Parratt,* a Fourteenth Amendment due process case. 454 U.S. 807, 102 S.Ct. 80, 70 L.Ed.2d 76 (1981). *See* Rodney A. Smolla, "The Displacement of Federal Due Process Claims by State Tort Remedies: *Parratt v. Taylor* and *Logan v. Zimmerman Brush Company,*" 1982 U.Ill.L.Rev. 831, 881 (discussing the application of due process principles to federal, as well as state, government). The Ninth Circuit did point out in *Weiss* that if Mr. Weiss proved that his property had been intentionally destroyed, in contrast to the negligent loss at issue in *Parratt,* the *Parratt* principles would not preclude a due process claim. 676 F.2d at 1323. However, three years after *Parratt,* the Supreme Court extended *Parratt*'s due process reasoning to intentional, as well as negligent, deprivations of property in *Hudson.* This

Court must follow that extension in the present case, which involves what appears to have been an intentional deprivation of property by a federal agent.

**4.** In contrast, the deprivation in *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982) (loss of a legal cause of action) resulted from the application of a statutory time limit when a state official negligently delayed a hearing on an allegation of unlawful termination of employment beyond the time limit. The Court held that *Parratt* did not apply because the deprivation came because of, not in spite of, established state procedure. (The statutory time limit was the "procedure" referred to by the Court.) *Id.* at 436, 102 S.Ct. at 1158.

**5.** A procedural due process claim is decided independently of the merits of the substantive claim. For example, in § 1983 cases, a plaintiff can recover compensatory damages for a proven due process violation only if the deprivation was unjustified on the merits. If, after postdeprivation procedure, it is determined that the deprivation was justified, a plaintiff can recover only nominal damages for the due process violation. *Carey v. Piphus,* 435 U.S. 247, 266–67, 98 S.Ct. 1042, 1053–54, 55 L.Ed.2d 252 (1978); *Knudson,* 832 F.2d at 1149; *Vanelli v. Reynolds School Dist. No. 7,* 667 F.2d 773, 781 (9th Cir. 1982).

offered to correct its error by determining his true status and reinstating any benefits which were due him on the merits of his claim, including benefits withheld from May, 1984. This postdeprivation procedure would have compensated Mr. Raditch for any loss of property to which he was entitled. However, Mr. Raditch refused to cooperate. He cannot now argue that he was denied procedural due process. *See Hudson*, 468 U.S. at 534–35, 104 S.Ct. at 3204–05; *Parratt*, 451 U.S. at 544, 101 S.Ct. at 1917.

The district court's judgment denying a writ of mandamus and dismissing Mr. Raditch's complaint is AFFIRMED.

Summary judgment on the Secretary's counterclaim for reimbursement of $30,-656.75, plus accumulated interest computed at the legal rate, is AFFIRMED. Mr. Raditch does not dispute that he owes the Government that money for benefits received while he was working.