UNITED STATES of America, Plaintiff,

v.

Neal E. WOODS, Defendant.

Civil Action No. 2:95cv381.

United States District Court,
E.D. Virginia,
Norfolk Division.

June 24, 1996.

---

Mark Anthony Exley, Assistant United States Attorney, Norfolk, VA, for United States.

Philip Harold Myers, Norfolk, VA, for Neal E. Woods.

*MEMORANDUM OPINION AND ORDER*

JACKSON, District Judge.

## INTRODUCTION

This matter comes before the Court upon the United States' motion for summary judgment,[1] filed on February 23, 1996 pursuant to Rule 56 of the Federal Rules of Civil Procedure. The United States initiated this action on April 27, 1995 to recover a principal amount of $185,383.82 plus interest, representing an overpayment to Defendant by the United States Department of Labor ("DOL") in the form of workers' compensation benefits. The United States filed the complaint pursuant to a Certificate of Indebtedness, issued by the DOL on March 2, 1995.

Defendant Woods responded to the motion for summary judgment on March 8, 1996, arguing that several procedural irregularities during the administrative process violated his right to due process. This matter is now ripe for judicial determination.

For the reasons that follow, the Court **GRANTS** the United States' motion for summary judgment.

## I. PROCEDURAL AND FACTUAL BACKGROUND

Defendant was employed as a plasterer for the U.S. Navy. On May 1, 1978, he filed a claim under the Federal Employees' Compensation Act ("FECA"), stating that he had injured his back while working on March 29, 1978. The DOL accepted his claim and Defendant received compensation. On May 16, 1991, however, the DOL issued a "Compensation Order Forfeiture and Termination of Compensation" ("Compensation Order") which stated that Defendant had forfeited his entitlement to compensation for the period of September 14, 1978 to May 4, 1991, because he knowingly omitted or understated his earnings from self-employment during that period. (Gov't Ex. E.) Defendant challenged the Compensation Order and requested a hearing. (Def.'s Mem. at 3.) The alleged procedural violations of which Defen-

dant now complains occurred at the hearing held on July 14, 1992. That hearing resulted in a "final" decision on September 16, 1992. According to Defendant, he filed an appeal with the DOL's Employees' Compensation Appeals Board ("ECAB"). (Def.'s Mem. at 8.) However, on May 27, 1993, at the request of the Director of the Office of Workers' Compensation Programs ("OWCP"), the ECAB remanded the case for a *de novo* determination. (Def.'s Ex. J.) The Director of the OWCP ("the Director") requested the remand because, according to the Director, the evidence of record did not provide adequate factual support for the determinations of forfeiture and overpayment. The Director also stated that the OWCP did not provide Defendant notice prior to the termination of his compensation in violation of the OWCP's own procedures. The order granting the remand noted that Defendant was served with a copy of the Director's motion, but Defendant did not respond within the allotted time. (*Id.*) On June 2, 1993, Defendant filed a petition for reconsideration of the order of remand. (Def.'s Mem. at 9; Def.'s Ex. K.) Citing 20 C.F.R. § 501.7(a) for the purpose of a petition for reconsideration, namely to advise the ECAB of an error of fact or law in its decision, the ECAB found as follows:

> appellant has failed to establish any error of fact or law warranting further consideration. Further, the question of whether oral argument shall be allowed a petition for reconsideration rests within the discretion of the Board. Oral argument on appellant's petition would delay the finality of the Board's decision and, in the opinion of the Board, would not serve the interests of justice.

(Def.'s Ex. K) (footnotes omitted.) Accordingly, the ECAB denied Defendant's petition for reconsideration. (*Id.*)

On remand, the DOL made a preliminary finding on April 11, 1994 that again stated that Defendant had forfeited his entitlement to compensation. The DOL notified Defen-

---

1. The United States also filed a motion to strike Defendant's second motion to dismiss and the first paragraph of Defendant's answer. Defendant withdrew the second motion to dismiss and the first paragraph of his answer at the Initial Pretrial Conference on February 27, 1996. Thus, the Court only addresses the Government's motion for summary judgment.

dant of this preliminary finding and indicated to him that within thirty (30) days of the notification, he could request a telephone conference or pre-recoupment hearing. (Def.'s Ex. M at 2.) The DOL also indicated to Defendant that if the DOL did not receive a reply within thirty (30) days, the DOL would issue a final decision on the basis of the information already in the file. (*Id.* at 4.) Defendant, however, did not respond to this preliminary finding. (Def.'s Mem. at 11.) On May 13, 1994, the DOL informed Defendant that it had found the preliminary finding to be correct and that the notification represented a formal decision. (Def.'s Ex. N.) The DOL also notified Defendant of his rights of appeal to the ECAB. Defendant did not appeal the final decision. (Def.'s Mem. at 12.) Thus, Defendant's present alleged liability arises from the final determination that the DOL issued on May 13, 1994.[2] (Def.'s Ex. N.)

On August 7, 1995, Defendant Woods filed a motion to dismiss, arguing that in the complaint, the United States failed to set forth the Court's jurisdiction and that the United States failed to set forth with particularity, as required by Rule 9(b) of the Federal Rules of Civil Procedure, "the circumstances constituting the alleged falsification (fraud)." By an order filed February 2, 1996, the Court denied Defendant's motion on both grounds and ordered Defendant to file an answer within ten (10) days of the date of the order. The memorandum opinion and order which denied Defendant's motion to dismiss indicated that the Court, pursuant to 5 U.S.C. § 8128 (1994), could not review the DOL's determination in the absence of an alleged violation of the United States Constitution or a statutory mandate. The answer, filed February 12, 1996, denied Defendant's indebtedness and set forth the following "Grounds of Defense:" 1) Defendant's rights to due process were violated when he allegedly was not allowed to subpoena witnesses for the administrative hearing and 2) the alleged one-hour time limit on the presentation of his defense violated his right to due process. Defendant now requests that the

Court dismiss the action because of these alleged constitutional violations.

In its motion for summary judgment, the United States argues that no genuine issues of material fact remain. Defendant responds that questions remain concerning the alleged due process violations. The United States did not reply to Defendant's opposition but addressed Defendant's grounds of defense, which are the substance of Defendant's opposition to the motion for summary judgment, in the United States' motion to strike and for summary judgment.

## II. LEGAL STANDARD

Summary judgment is appropriate when the court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c). Once a party has properly filed evidence supporting the motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c), the burden shifts to the nonmoving party to set forth specific facts showing genuine issues for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *accord Sylvia Dev. Corp. v. Calvert County, Md.,* 48 F.3d 810, 817 (4th Cir.1995). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. at 2552. The court must view the record as a whole and in the light most favorable to the nonmoving party. *Terry's Floor Fashions, Inc. v. Burlington Indus., Inc.,* 763 F.2d 604, 610 (4th Cir.1985). It must draw any permissible inference from the underlying facts. *Tuck v. Henkel Corp.,* 973 F.2d 371, 374 (4th Cir.1992), *cert. denied,* 507 U.S. 918, 113 S.Ct. 1276, 122 L.Ed.2d 671 (1993). However, it need consider only reasonable inferences from the evidence. *Sylvia Dev. Corp.,* 48 F.3d at 818 (citing *Ford Motor Co. v. McDavid,* 259 F.2d 261, 266 (4th

---

**2.** Much of the procedural background outlined in the Court's order of February 2, 1996 originated from the United States' memorandum. The

Court stated incorrectly that the hearing on July 14, 1992 formed the basis of Defendant's liability.

Cir.), *cert. denied,* 358 U.S. 908, 79 S.Ct. 234, 3 L.Ed.2d 229 (1958)).

## III. DISCUSSION

As the Court reasoned in its February 2, 1996 order, 5 U.S.C. § 8128 (1994) prohibits judicial review of the DOL's determination in the absence of a violation of the U.S. Constitution or a statutory mandate. Apparently seizing upon that line of reasoning, Defendant now presents the Court with defenses based upon alleged violations of procedural due process.

The Court has traced the many procedural turns of the administrative record to determine whether the DOL violated Defendant's right to procedural due process. Defendant's ordeal apparently began in 1990; however, the Court's inquiry focuses upon two discrete time periods within the last six years: 1) the hearing of July 14, 1992 and 2) the remand and resultant final determination beginning on April 11, 1994 and ending on May 13, 1994. Defendant requests that the Court examine the procedures of the hearing on July 14, 1992 despite the DOL's recognition of its procedural irregularities and its subsequent *de novo* review of Defendant's case. The United States contends that a review of the hearing of July 14, 1992 is inappropriate because the remand makes the issue of alleged violations of procedural due process at that hearing moot. Regarding the issuance of subpoenas, the United States argues that the Hearing Representative's refusal to issue subpoenas on behalf of Defendant was not in error because Defendant failed to follow the procedures set out in the governing regulations. Regarding the length of the hearing, the United States argues that Defendant was allowed all the time that he wanted to present his case and that he has not indicated how the length of the hearing was a violation of due process. The Court addresses each of these issues in turn.

### A. *The Effect of the Remand*

■ The Court finds that the remand and *de novo* review of Defendant's case makes Defendant's claims regarding the hearing in 1992 moot. The Court finds instructive a case decided by the United States Court of Appeals for the Ninth Circuit in which the OWCP initially did not follow its own procedures but remanded the case for a *de novo* determination. *Raditch v. United States,* 929 F.2d 478 (9th Cir.1991). In that case, someone in the OWCP decided to terminate Mr. Raditch's benefits without providing him notice or an opportunity to respond and without following the OWCP's procedures for gathering medical evidence. *Id.* at 480. Upon remand, the OWCP sent Mr. Raditch a letter asking him for information about his past and present employment. Mr. Raditch did not respond. Mr. Raditch argued that he should not have to provide information because the OWCP wrongfully terminated his benefits. He further argued that the OWCP should have automatically reinstated his benefits. *Id.* at 481. The Ninth Circuit explained that Mr. Raditch misunderstood his rights as follows:

> A violation of procedural rights requires only a procedural correction, not the reinstatement of a substantive right to which the claimant may not be entitled on the merits. Here, the OWCP offered to correct its error by determining his true status and reinstating any benefits which were due him on the merits of his claim, including benefits withheld from May, 1984. The postdeprivation procedure would have compensated Mr. Raditch for any loss of property to which he was entitled. However, Mr. Raditch refused to cooperate. He cannot now argue that he was denied procedural due process.

*Id.* at 481–82 (citing *Hudson v. Palmer,* 468 U.S. 517, 534–35, 104 S.Ct. 3194, 3204–05, 82 L.Ed.2d 393 (1984); *Parratt v. Taylor,* 451 U.S. 527, 544, 101 S.Ct. 1908, 1917, 68 L.Ed.2d 420 (1981)).

Although in the instant case Defendant does not argue that the OWCP should restore his benefits, his entitlement and his remedy are the same as they were in *Raditch.* The DOL tried to correct what it deemed its procedural errors by remanding the case and reviewing it *de novo.* During that process, Defendant had the opportunity to raise the issues he now raises. Defendant, however, was silent. He cannot now argue that the initial proceedings violated his rights

because the remand made the initial proceedings a virtual nullity. The post-deprivation remedy of a remand could have fully compensated Defendant for any procedural loss that he suffered. This Court, therefore, holds that the setting aside of the determination of September 16, 1992 and the *de novo* review satisfied the requirements of procedural due process. *Cf. Parratt*, 451 U.S. at 544, 101 S.Ct. at 1917.

Defendant also argues that he "was therefor [sic] never allowed a *de novo* hearing on the merits of his case, but it was *de novo* decisions allowed only." (Def.'s Mem. at 17.) The letter of April 11, 1994, (Def.'s Ex. M at 2), provided Defendant with an opportunity for a *de novo* hearing. Defendant did not take advantage of that opportunity. Defendant's objection to the United States' line of reasoning, therefore, must actually be that the DOL relied upon information *already* in the file. Even if the first hearing had not occurred, the DOL would have relied in part upon its own investigation and the results of such investigation would have generated a file. Just as in the first instance, the DOL invited Defendant to supplement, explain, or object to the information in the file. (Def.'s Ex. M.) However, unlike in the first instance, Defendant chose not to participate in the process. The Court does not accept Defendant's invitation to distinguish between a *de novo* hearing and *de novo* decision in this case. There was no *de novo* hearing on remand because Defendant did not request one. The Court cannot now find that no hearing on remand violated Defendant's right to due process. Defendant chose, by not responding to the DOL's letter of April 11, 1994, this procedural path and must now suffer the consequences.

Furthermore, even if the DOL had not granted Defendant a *de novo* hearing, the Court rejects Defendant's claims that the DOL denied him procedural due process by allegedly limiting the hearing to one hour or by failing to subpoena any witnesses on his behalf. The Court addresses those claims below.

## B. *Length of the Hearing*

■ In defense counsel's letter of July 7, 1992 to the Hearing Representative ("the HR"), defense counsel indicated that the HR had advised him that he would only have one hour to present his defense. (Def.'s Ex. E at 2.) During the hearing on July 14, 1992, the exchange between another of Defendant's attorneys and the HR suggests to the Court that the HR did not limit the time allotted to Defendant but indicated that this type of hearing *usually* only requires an hour. (Def.'s Ex. G at 8–9.) The exchange indicates that one of Defendant's attorneys had a conflict at 2:00 p.m., that the HR suggested that he could appear at 9:00 a.m., and that she was certain that the hearing would not last so long as to present a problem for counsel at 2:00 p.m. (*Id.* at 9.) Thus, the Court must determine whether, viewing the record in a light most favorable to Defendant, the alleged one-hour time limit violated his right to procedural due process. In viewing this record, however, the Court is only required to draw reasonable inferences. *Sylvia Dev. Corp*, 48 F.3d at 818 (citing *Ford Motor Co. v. McDavid*, 259 F.2d 261, 266 (4th Cir.), *cert. denied*, 358 U.S. 908, 79 S.Ct. 234, 3 L.Ed.2d 229 (1958)).

■ "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' " *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)). However, the competing interests of the different parties to the particular dispute determine the quality of the hearing. *Richardson v. Town of Eastover*, 922 F.2d 1152, 1159 (4th Cir.1991). In other words, "in a meaningful manner" takes on different meanings in different circumstances. *Cf. Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972) ("due process is flexible and calls for such procedural protections as the particular situation demands"). "A more formal hearing would be expected when a significant property interest, one raising the possibility of a grievous or serious loss, is impacted." *Richardson*, 922 F.2d at 1159 (citations omitted). To determine the process due to Defendant, the Court considers the following three factors:

First, the private interest that will be affected by the official action; second the risk of an erroneous deprivation of such interest through the procedure used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335, 96 S.Ct. at 903 (citing *Goldberg v. Kelly*, 397 U.S. 254, 263–71, 90 S.Ct. 1011, 1018–22, 25 L.Ed.2d 287 (1970)).

The Court first considers Defendant's private interest. The administrative action in this case resulted in a determination that Defendant was no longer entitled to receive workers' compensation and that he had forfeited the compensation received for approximately thirteen (13) years. The United States Supreme Court in examining the pre-deprivation procedural requirements in the context of social security benefits found that the private interests involved were not as substantial as those involved in the context of welfare benefits and found less reason than in *Goldberg* to depart from the principle that something less than an evidentiary hearing is sufficient prior to adverse administrative action. *Mathews*, 424 U.S. at 343, 96 S.Ct. at 906–07. For the purpose of determining what pre-deprivation procedures were required in this case, the Court finds that workers' compensation benefits are similar to social security benefits. Although the hardship that erroneous termination could impose upon Defendant may be significant, it is less significant than the hardship for a welfare recipient in similar circumstances because Defendant could have recourse to other government entitlement programs if the loss of his workers' compensation placed him below the subsistence level. *See Mathews*, 424 U.S. at 342–43, 96 S.Ct. at 906–07.

Despite the apparent differences between the interests in workers' compensation and welfare benefits, the DOL did provide Defendant with a hearing. Defendant complains, however, that the hearing was inadequate because of the alleged one-hour time limit.

This particular complaint focuses upon the Court's second consideration: the fairness and reliability of procedures provided and the probable value of additional procedural safeguards. Looking first at the fairness and reliability of the procedures in this case, the Court notes that the DOL provided Defendant with many avenues to respond to its preliminary determination, in 1991 and 1994, that Defendant had forfeited his workers' compensation and that his benefits should be terminated. In 1991, the DOL informed Defendant of his right to a hearing, reconsideration, or review by the appeals board. (Gov't Ex. H.) The right to a hearing included the right to present testimony and written evidence in support of his claim. (*Id.*) In 1994, the DOL, in somewhat greater detail, informed Defendant of his rights to submit evidence and arguments to challenge the DOL's preliminary determination. (Def.'s Ex. M.) Thus, it appears to the Court, and Defendant does not dispute, that the established procedures are both fair and reliable. Defendant does dispute, however, that the HR's alleged time restriction afforded him the protections of due process. Consequently the Court must now consider whether additional safeguards would be valuable when balanced against competing interests.

Unlike the situation in *Mathews*, the determination of Defendant's entitlement to past and future compensation did in part hinge upon the HR's assessment of Defendant's credibility. *Cf. Mathews*, 424 U.S. at 344, 96 S.Ct. at 907 (finding that witnesses' credibility and veracity are critical to welfare determination but for social security, determination turns on " 'routine, standard, and unbiased medical reports by physician specialists' "). This conclusion is supported by the HR's remark that generally she can assess a claimant's credibility within one hour. (Def.'s Ex. G at 9.) Furthermore, many of the questions that the HR posed to counsel concerned *Defendant's* representations on the forms he submitted to the DOL. (*E.g.,* Def.'s Ex. G at 14–26.) Defendant, however, did not appear at the hearing. (Def.'s Ex. G at 3.) These facts further suggest that a hearing would be required; however, they do not suggest whether the HR could limit the length of the hearing to one hour. The

Court concludes, however, that because Defendant did not appear for the hearing, allowing defense counsel more than an hour to present the case would not have assisted the HR in at least one of the critical areas of her decision-making process: assessment of credibility.

Defendant also argues in opposition to the United States' motion for summary judgment that "only one hour to put on his case even if he were able to get his many witnesses to attend voluntarily . . . is surely not a hearing in a meaningful manner." (Def.'s Mem. at 20.) Defendant does not, however, indicate to the Court nor did he apparently indicate to the HR how he would have used more than an hour's worth of time. The entire hearing on July 14, 1992 only lasted thirty-five minutes. (Def.'s Ex. G at 3, 36.) During the hearing defense counsel mentioned one witness from First Virginia Bank who allegedly would not appear voluntarily. (Def.'s Ex. G at 10–11.) Defendant has not indicated to the Court that the testimony of the witness, if he had appeared, would have lasted longer than twenty-five minutes—the balance of the hour that Defendant alleges he was allotted. Also, Defendant has not indicated to the Court why the information could not have been presented for the record in another form of evidence. Defendant has not notified the Court of what he would have done with more time or how his strategy of defense would have changed if the HR had allotted more time for the hearing. Thus, even viewing the record in a light most favorable to the non-moving party, the Court's second consideration counsels against the conclusion that the length of hearing in this case violated Defendant's right to due process.

■ Finally, the Court must consider the Government's interest. Cases often discuss the financial burden that requiring pre-deprivation hearings would impose upon the Government and ultimately the public. *E.g., Mathews,* 424 U.S. at 347–48, 96 S.Ct. at 908–09; *Turnage v. United States,* 639 F.Supp. 228, 233–34 (E.D.N.C.1986). In this instance, the DOL did provide a hearing but there could exist additional costs if the agency were required to be more yielding in its time. For example, providing claimants with an unlimited amount of time to defend their claims or allowing claimants to ask for more time without specifying why he or she needed more than an hour could result in fewer claims being resolved or the need to hire more hearing representatives and associated personnel. Although fiscal and administrative constraints are not dispositive, the Court must weigh these factors in its evaluation of the challenged procedures. *Mathews,* 424 U.S. at 348, 96 S.Ct. at 909. The Court also recognizes that the agency and Defendant have an interest in swift resolution of the question of a claimant's eligibility. *Cf. Goldberg v. Kelly,* 397 U.S. 254, 267, 90 S.Ct. 1011, 1020, 25 L.Ed.2d 287 (1970) (finding that welfare authorities and recipient have interest in speedy resolution); *Food City, Inc. v. Rominger,* 917 F.Supp. 364, 367 (M.D.N.C.1995) (noting government's interest in rapid implementation of disqualification decisions in food stamp program). Both of these considerations weigh against a determination that the alleged one-hour time limit violated Defendant's right to procedural due process.

Viewing the record in a light most favorable to Defendant and accepting Defendant's contention that the HR limited him to one hour for the presentation of his defense, the Court is unable to surmise how the DOL violated Defendant's rights. Each of the three considerations in *Mathews* counsels against a finding in Defendant's favor. Defendant does not argue that he was unable to present certain evidence or to advance certain arguments which would have affected the first "final" decision of September 16, 1992 or the final decision of May 13, 1994. There exists no evidence to suggest that Defendant altered his defense or chose not to call witnesses who would have appeared voluntarily because of the alleged one-hour time limit. Furthermore, the record indicates that Defendant only used thirty-five minutes of the allegedly allotted time. (Def.'s Ex. G. at 3, 36.) It is not unreasonable for the HR to require the claimant to provide an estimate of how much time he requires to present evidence and argument on his behalf. Defendant has not demonstrated that he actually needed more time or that more time

would have yielded a more just result. Thus, the Court concludes that the alleged one-hour time limit did not violate Defendant's right to due process.

## C. *Issuance of Subpoenas*

■ The regulation governing the issuance of subpoenas for the administrative hearing on July 14, 1992 provides as follows:

A claimant who desires the issuance of a subpoena shall, *not less than 20 days prior to the date fixed for the hearing,* file with the Office representative a written request therefor, designating the witness or documents to be produced, and describing the address and location thereof with sufficient particularity to permit such witnesses or documents to be found. *The request for a subpoena shall state the pertinent facts which the claimant expects to establish by such witnesses or documents and whether such facts could be established by other evidence without the use of a subpoena.*

20 C.F.R. § 10.134(a) (1995) (emphasis added). Referring to the letter of July 7, 1992, Defendant admits that he did not file his request at least twenty (20) days before the hearing. (Def.'s Mem. at 18.) Defendant, however, suggests that one of his attorney's conversations via telephone with the HR indicated that a written request would have been futile. (*Id.*) The Court notes that this conversation occurred just seven (7) days before the day of the hearing. Defendant also complains because he was unprepared to question an official from Naval Investigative Services who appeared before the HR. (*Id.* at 18–19.) Defendant contends that he was unprepared because the HR told his counsel that no official would be subpoenaed, and he did not know that any officials would appear without a subpoena.

Reviewing the defense counsel's letter to the HR, the Court makes several observations. First, the letter does not indicate that counsel provided the HR with any justification for the subpoenas as required by the regulations, even at that late date. For example, regarding nongovernmental witnesses, counsel stated in the letter, "the only reason I can advance to you that they will not appear without a subpoena is because

they, like most witnesses, are not willing to appear voluntarily at any court or administrative hearing, which does not directly affect their own interests." (Def.'s Ex. E at 2.) This "reason" does not explain why counsel could not produce the information sought from the witnesses by other means nor does counsel state what information he sought from these witnesses. Defendant also has not explained to the Court why the HR should have considered Defendant's request which Defendant made less than twenty days before the hearing or why this refusal after the deadline set by the regulations was a violation of his right to procedural due process.

■ Defendant's inability to subpoena witness is not a per se violation of his right to procedural due process. *Wool v. Maryland–National Capital Park & Planning Comm'n,* 664 F.Supp. 225, 231 (D.Md.1987) (citing *Prebble v. Brodrick,* 535 F.2d 605, 615–16 (10th Cir.1976)). Defendant has not shown that he did not possess other means to defend against the claim nor that these other means were inadequate. He could have presented written statements and exhibits, 20 C.F.R. § 10.133 (1995), he was allowed representation of legal counsel, and he could have presented oral testimony. That testimony could have been that of Defendant, any witnesses who would have voluntarily appeared, and if Defendant had requested subpoenas twenty (20) days or more before the hearing, he may have been able to compel some individuals to appear, 20 C.F.R. § 10.134 (1995), and testify as well as produce "books, papers, documents, and other evidence." 20 C.F.R. § 10.133 (1995). Defendant, however, chose none of these avenues but relied primarily on the oral argument of counsel. Thus, the Court is not convinced that the lack of subpoenas resulted in a violation of Defendant's right to procedural due process. *Cf. Wool,* 664 F.Supp. at 230–31 (finding that state proceedings satisfied minimum procedural requirements when plaintiff submitted exhibits, called witnesses, cross-examined opposing witnesses, and submitted legal memoranda).

Also, consideration of the three factors outlined in *Mathews* does not lead the Court

to conclude that the refusal of the HR to issue subpoenas violated Defendant's rights. Factors one and three, Defendant's interests and the United States' interest are the same as outlined the above discussion of the alleged one-hour time limit. Regarding the second factor, Defendant has not challenged the fairness or reliability of the procedures established by the regulation for obtaining subpoenas, nor does the Court have any information before it to indicate that the regulation on its face works some injustice. The Court does not find that additional or substitute procedures would be valuable in this case. Even if the HR had considered the request, just seven (7) days before the hearing, Defendant has not demonstrated a *need* for the subpoenas that other types of evidence could not satisfy.[3]

■ Furthermore, Defendant's argument that he did not expect a representative of the Naval Investigative Services to appear at the hearing and was "unfairly taken by surprise," (Def.'s Mem. at 19), is of no moment. The regulations governing determinations of claims and hearing and review procedures plainly contemplates that an official of the employing agency may attend the hearing.

> [T]he employing agency has an interest in the outcome of the hearing and frequently possesses information pertinent to issues raised at the hearing. Therefore, *the employing agency shall be afforded the opportunity to have an agency representative in attendance at the hearing....* Where the employing agency sends a representative, the representative will attend primarily in the role of an observer without the right to question the claimant or make any argument.

20 C.F.R. § 10.135 (1995) (emphasis added). An examination of the transcript of the hearing on July 14, 1992 indicates that the official from the Naval Investigative Services did not testify or offer any evidence. His presence, although a "surprise" to defense counsel, despite the above-cited regulation, does not serve as a valid basis for challenging the procedures of the hearing.

Taking into account both the issue of the HR's refusal to issue subpoenas and the alleged one-hour time limit, the Court does not find any violation of procedural due process. "The essence of due process is the requirement that 'a person in jeopardy of serious loss [be given] notice of the case against him and an opportunity to meet it.'" *Mathews v. Eldridge,* 424 U.S. 319, 348, 96 S.Ct. 893, 909, 47 L.Ed.2d 18 (1976) (quoting *Joint Anti–Fascist Committee v. McGrath,* 341 U.S. 123, 171–72, 71 S.Ct. 624, 649, 95 L.Ed. 817 (1951)). Defendant received notice and had an opportunity to be heard. Although the hearing may not have proceeded in the manner Defendant ultimately desired, he has not demonstrated to the Court that even under the alleged time restrictions and without subpoenas, the DOL did not provide him with sufficient avenues to present his case. The record thus does not reflect, in view of the many procedural safeguards afforded Defendant, that the DOL violated Defendant's right to procedural due process.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** the United States' motion for summary judgment.

The Clerk is **DIRECTED** to send a copy of this order to the United States Attorney and counsel for Defendant.

It is so **ORDERED.**

---

**3.** The Court recognizes that in judicial hearings, a party may subpoena others, subject to objections. Fed.R.Civ.P. 45. However, this agency's action entitled Defendant to something less than a full evidentiary, judicial-style hearing. *Goldberg v. Kelly,* 397 U.S. 254, 266, 90 S.Ct. 1011, 1019–20, 25 L.Ed.2d 287 (1970). The Court also notes that even under the Federal Rules of Civil Procedure, "[o]n timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it ... fails to allow reasonable time for compliance." Fed. R.Civ.P. 45(c)(3)(a)(i). Arguably, even in the context of a judicial hearing, a party who obtained subpoenas merely seven days before the hearing and still had to serve the subpoenas upon the relevant individuals, would not have allowed a reasonable time for compliance and would be subject to a motion to quash.