Donald R. SOEKEN, et al. Plaintiffs,

v.

Alexis M. HERMAN, Secretary,
U.S. Department of Labor,
et. al., Defendants.

No. 98–2024.

United States District Court,
District of Columbia.

Feb. 17, 1999.

**100**

---

### MEMORANDUM OPINION

THOMAS F. HOGAN, District Judge.

Pending before the Court is defendants' motion for dismissal. Defendants' motion raises three issues. First, whether 5 U.S.C. § 8128(b) prevents the Court from reviewing the decision of the Federal Employees' Compensation Act (FECA) that denied the award of benefits to plaintiff for violating a clear statutory mandate. Second, whether defendant's interpretation of the term "physician," which barred the use of "licensed certified

psychotherapists" for use as medical experts, deprived the plaintiff of his due process rights. Finally, whether the doctrine of absolute immunity bars the plaintiffs' claims against defendants Walsh, Groom, and Kanjorski in their individual capacities. After considering the written submissions of the parties, the Court grants the motion to dismiss for the defendant in respect to all issues.

I.

This case stems from the denial of plaintiff's physical and mental injury claims by the Employees' Compensation Appeals Board (ECAB) of the U.S. Department of Labor (DOL). On September 8, 1989, plaintiff Ern Reynolds, while working as an office systems analyst for the Antitrust Division of the U.S Department of Justice, discovered a multi-million dollar computer procurement overcharge. Reynolds suggests that as a result of this discovery, his superiors deliberately retaliated against him by moving him into an office without natural light, contrary to the written recommendations of Reynolds' eye doctors. Shortly after the change in offices, Reynolds began to experience a neuro-ophthalmological disorder and depression. As a result of these illnesses, plaintiff Ern Reynolds received a medical retirement from the Department of Justice on November 30, 1990. On November 27, 1991, Reynolds filed a claim with the Office of Workers' Compensation Programs (OWCP) alleging that his retirement was based upon sustaining work-related injuries. OWCP denied Reynolds claim on April 20, 1992, based on "conflicting or absent evidence" as to whether the alleged events or exposures "occurred at the times, places and manners alleged." Defendant's Attachment 4, at 386. The decision found that Reynolds had failed to provide either a detailed statement of employment factors which caused his injury or a medical opinion explaining how and in what manner the employment factors inflicted injury.

Reynolds appealed the denial of his claim to the OWCP's Branch of Hearing and Review, and a hearing was held on October 7, 1992. In an opinion dated January 21, 1993, the OWCP Hearing Representative, after

considering Reynold's testimony and evidence, affirmed the denial of his claim, finding that Reynolds failed to submit any medical evidence demonstrating that he sustained an injury in the performance of a work-related duty. Defendant's Attachment 5, at 284. Reynold then appealed this decision to ECAB; and in a decision dated June 8, 1994, ECAB affirmed OWCP's denial of Reynolds' claim. ECAB based its decision on the fact that Reynolds failed to submit "rationalized medical opinion evidence necessary to show [a] causal relationship," and as a result found that Reynolds did not satisfy the burden of proof necessary to establish a work-related injury. Defendant's Attachment 6, at 6.

Reynolds requested reconsideration of his claim by the OWCP and submitted a medical report from Dr. Stephen J. Rojcewicz. Rojcewicz's report stated that Reynolds suffered from both a depressive and mixed personality disorder, concluding that these conditions were "directly and proximately caused by the work stresses, namely by actions that in his opinion were retaliatory and harassing." Defendant's Attachment 7, at 6. OWCP affirmed its former decision, finding that Dr. Rojcewicz's evaluation lacked probative value because the report failed "to diagnose a condition related to an accepted work-related factor of employment." Defendants Attachment 8, at 6. Based on this decision, Reynolds again requested reconsideration on January 11, 1995. Because Reynolds failed to submit any new evidence or legal theories, however. OWCP refused to reconsider the case.

Once again Reynolds requested reconsideration of his claim, submitting the report of Dr. Donald R. Soeken, a psychotherapist with a doctorate in Human Development who asserted that Reynolds suffered from work-related injuries. OWCP rejected this request, however, stating that because Soeken was a psychotherapist, he didn't qualify as a probative witness under the statutory definition of relevant medical evidence pursuant to 5 U.S.C. § 8108(2) and as clarified in the Federal (FECA) Procedure Manual at 3–100–3. Reynolds appealed OWCP's ruling and in a decision issued August 20, 1997, ECAB affirmed OWCP's determination that a licensed certified psychotherapist with a doctorate in human development did not fall within the ambit of a physician or clinical psychologist as mandated by FECA.

■ In this action, plaintiff Reynolds claims that defendants Secretary of Labor Herman, assistant Secretary of Labor Anderson, and three members of the ECAB have violated his right to due process by refusing to consider Dr. Soeken's opinion as probative evidence so that he can be entitled to FECA benefits by the ECAB.[1] Although the plaintiff asserts many alternative theories of liability, his main contentions are: (1) that defendants, by refusing to assign any probative weight to Dr. Soeken as a medical expert, deprived plaintiff of his due process rights;[2] (2) that OWCP's failure to consider Dr. Soeken's report resulted in violations of plaintiff's' civil rights pursuant to 42 U.S.C. §§ 1983 and 1985; and (3) that defendants Walsh, Groom, and Kanjorski, as members of ECAB, are liable in their individual capacities for denying Reynolds' FECA claim. Defendants have moved to dismiss the Complaint under Fed.R.Civ.P. 12(b)(1) and (6),

---

1. Soeken is also a named plaintiff in this suit, asserting a financial injury based upon OWCP's refusal to consider his testimony probative. Soeken fails to meet the standing requirements, however, because he fails to assert an "immediate" and "concrete" injury. See Lujan v. Defenders of the Wildlife, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Soeken's complaint only hypothesizes about the possibility that he will lose business and does not give any facts that would satisfy the injury requirement. Consequently, even if Soeken could establish a cognizable injury, prudential standing considerations would bar his claim because Soeken fails to assert that he falls within the zone of interest protected by the statutory provisions of FECA.

See Animal Legal Defense Fund v. Glickman, 154 F.3d 426, 431 (D.C.Cir.1998) (en banc).

2. Reynolds also asserts a host of generalized, and somewhat unclear, due process claims as well as alleging violations of the Supremacy Clause, the First Amendment, and the Full Faith and Credit Clause based upon his assertion that OWCP is biased or tainted. Reynolds allegations are entirely unsubstantiated, and the Court will therefore deny Reynolds' request for further discovery on OWCP's alleged impropriety. See United States v. Ryan, 485 F.Supp. 1285 (S.D.N.Y.1980) (discovery is inappropriate when based upon unsubstantiated, unverified, or general assertions).

for lack of subject matter jurisdiction and failure to state a claim.

## II.

### A. Standard of Review

A motion to dismiss is appropriate only if it is evident that no relief could be granted under any set of facts that could be proven to support the allegations made by the plaintiff in the complaint. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Martin v. Ezeagu*, 816 F.Supp. 20, 23 (D.D.C.1993). In evaluating a motion to dismiss, the Court must construe the complaint in the light most favorable to the plaintiff and give the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Boehner v. McDermott*, No. Civ. 98–594, 1998 WL 436897, at *2 (D.D.C. July 28, 1998), *citing Schuler v. United States*, 617 F.2d 605, 608 (D.C.Cir.1979). However, it is the plaintiff's burden to establish the existence of subject matter jurisdiction. *See Murphy v. United States*, 45 F.3d 520, 522 (1st Cir.1995).

### B. Statutory Framework of the FECA

 Plaintiff's Complaint alleges due process and civil rights[3] violations based upon the exclusion of Dr. Soeken, a licensed psychotherapist, as a "physician" for purposes of FECA regulations. The Federal Employees' Compensation Act, 5 U.S.C. § 8102 *et. seq.* (1994), is the exclusive workers' compensation scheme for federal employees. The Act mandates that the United States "pay compensation for the disability or death of an employee resulting from personal injury sustained while in the performance of his duty." *Id.* The Secretary of Labor (Secretary) has the responsibility of enforcing FECA and consequently has the authority to promulgate rules and regulations and decide all questions arising under the Act. *See* 5 U.S.C. §§ 8145, 8149 (1994). Pursuant to 20 C.F.R. § 10.2, the Secretary has delegated this administrative and rule-making authority to the Director of the OWCP.

Upon a congressional mandate, the Secretary created ECAB, which has the authority to hear and make final decisions on appeal taken from OWCP determinations and awards. *See* 5 U.S.C. § 8149 (1994); 20 C.F.R. § 10.301. To be awarded compensation from ECAB, the claimant must establish "by the weight of reliable, probative and substantial evidence" that the claimed injury was caused by the employee's Federal employment. 20 C.F.R. § 10.110. To satisfy this evidentiary hurdle, the claimant must "submit rationalized medical opinion evidence" from an individual defined as a "physician" pursuant to the Act. *Id.* The interpretation of this definition is the source of contention between the plaintiff and defendants.

Section 8101(2) of the Act defines a physician as including:

> "surgeons, podiatrist, dentist, clinical psychologists, optometrists, chiropractors, and osteopathic practitioners within the scope of their practice as defined by state law. The term 'physician' includes chiropractors only to the extent that their reimbursable services are limited to treatment consisting of manual manipulation of the spine to correct a subluxation as demonstrated by x-ray to exist, and subject to regulation by the Secretary."

---

**3.** Reynolds' civil rights claims are premised upon 42 U.S.C. §§ 1983 and 1985. Because this Court finds that Reynolds fails to satisfy one or more of the requirements under these statutes, these claims are without merit. For instance, § 1983 only provides a cause of action against individuals that violate one's constitutional rights "under color of state law." *District of Columbia v. Carter*, 409 U.S. 418, 424–25, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973). Because Reynolds claims are focused on the actions of federal employees, who do not act under the color of state law, he does not have a cognizable § 1983 claim. Furthermore, to assert a § 1985 claim, a plaintiff must allege that he was a member of a protected class; that the defendants conspired to deprive plaintiff of his constitutional or federal rights; that the defendants acted with a class-based, discriminatory animus; and that the plaintiff sustained damages as a result of defendants' actions. *See Griffin v. Breckenridge*, 403 U.S. 88, 102–3, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). Reynolds' Complaint fails to allege that either he or Soeken were members of a protected class. Even assuming, *arguendo*, that the plaintiff did establish this first requisite, there is no showing that the defendants conspired to deprive Reynolds of any rights or that the defendants acted with bias.

5 U.S.C. § 8101(2). The Federal (FECA) Procedure Manual expounds upon the definition by including clinical psychologists under the term "physician." Federal (FECA) Procedure Manual, 3–0100–3. In order to qualify as a clinical psychologist under the Manual, an individual must meet three criteria. *Id.* First, the individual must be "licensed or certified as a psychologist at the independent practice level of psychology by the state in which he or she practices." *Id.* Second, the individual must possess either a doctoral degree in psychology from a recognized accredited educational institution or be listed in a national register of health service providers in psychology that the Secretary deems appropriate. *Id.* Third, the individual must possess two years of supervised experience in health services including at least one year of post-degree work. *Id.*

Claimants have three different opportunities to appeal a FECA decision. First, an individual can request a hearing before an OWCP hearing representative or a review of the written record within thirty days of the initial decision. *See* 5 U.S.C. § 8124 (1994); 20 C.F.R. § 10.131. If the OWCP review does not satisfy the claimant, then he or she has one year to request reconsideration. *See* 5 U.S.C. § 8128 (1994); 20 C.F.R. § 10.138. Finally, the claimant may file an appeal with ECAB within one year. *See* 20 C.F.R. § 10.139. Reynolds, however, arguing that his due process and civil rights were deprived because he was barred from using Dr. Soeken as an expert witness, seeks an additional review of the decision by this Court.

C. The Section 8128(b) Limitation on Judicial Review

█ In enacting FECA, Congress sought to strike a compromise between granting injured employees immediate benefits while insulating the government from workers' compensation lawsuits. *See Lockheed Aircraft Corp. v. United States,* 460 U.S. 190, 194, 103 S.Ct. 1033, 74 L.Ed.2d 911 (1983). To effec-

tuate this compromise, Congress enacted 5 U.S.C. § 8128(b) (1994), which limits regulatory review as the exclusive remedy for work-related injuries. Section 8128(b) states:

> The action of the Secretary or his designee in allowing or denying a payment under this subchapter is -
>
> (1) final and conclusive for all purposes and with respect to all questions of law and fact; and,
>
> (2) not subject to review by another official of the United States or by a Court by mandamus or otherwise.

5 U.S.C. § 8128(b). Although this Court lacks jurisdiction to review ECAB's findings of fact or law, *see Gilmore v. United States Dep't of Labor,* 1993 WL 89050 at *1 (D.C.Cir.1993), the District Court does have the jurisdiction to review actions violative of the Constitution.[4] *See Wacks v. Reich,* 950 F.Supp. 454, 458 (D.Conn.1996).

█ A more difficult question is whether § 8128(b) prevents this court from reviewing violations of a clear statutory mandate. There is a split in the circuits as to whether § 8128(b) prevents judicial review of violations of a clear statutory mandate. Because this Circuit has never directly considered the issue, this is a matter of first impression. The First and Ninth Circuits have rejected the "statutory mandate" exception, noting that because 5 U.S.C. § 8145 gives the Secretary of Labor "virtually limitless" authority "to make the policy choices associated with disability decisions," courts are barred from reviewing violations of a clear statutory mandate. *See Paluca v. Secretary of Labor,* 813 F.2d 524 (1st Cir.1987) (holding that district court did not have jurisdiction to review Secretary's compliance with FECA based on statutory violations because it would directly conflict with Secretary's authority to freely make policy decisions regarding disability benefits.); *Staacke v. United States Secretary of Labor,* 841 F.2d 278, 282 (9th Cir. 1988).[5] In *Hanauer v. Reich,* however, the

4. A claimant may not, however, circumvent § 8128(b) by "disguising a claim for benefits or an objection to the denial of benefits as a constitutional challenge." *United States v. Vetti,* 681 F.Supp. 986, 990 (D.Conn.1988).

5. The Court notes that dicta in *Staacke* and *Brumley,* 28 F.3d at 747, indicate the possibility of asserting § 1331 jurisdiction to review claims that OWCP policy violated its clear statutory

Fourth Circuit recognized judicial review for violations of clear statutory violations, basing its holding upon the Supreme Court's decision in *Leedom v. Kyne*, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958).[6] *See* 82 F.3d 1304, 1307 (4th Cir.1996). The D.C. Circuit has considered statutory bars to judicial review in regards to presidential action. *See Chamber of Commerce v. Reich*, 74 F.3d 1322 (D.C.Cir.1996). In *Reich*, the court held that absent a statute that implicitly precludes review of presidential actions, such actions are reviewable if the petitioner alleges that such conduct is *ultra vires* and that the action violates either a specific statutory prohibition or deprives an individual of a right granted by statute. *Id.* The instant case is distinguishable, however, because § 8101 neither confers upon Reynolds a right to use a psychotherapist as a probative expert witness nor does OWCP's interpretation of § 8101 violate any statutory prohibition. In *Shook v. District of Columbia Fin. Responsibility and Management Assistance Auth.*, 132 F.3d 775 (D.C.Cir.1998), the D.C. Circuit held that a statutory provision that precluded judicial review of the agency's ability to issue orders did not preclude the court from reviewing the legality of such orders. Furthermore, the D.C. Circuit has held that a statutory prohibition of judicial review of an agency's exercise of its powers as a receiver of a bank did not preclude review of the agency's decision to appoint a receiver. *See James Madison Ltd. v. Ludwig*, 82 F.3d 1085 (D.C.Cir.1996). Unlike *Ludwig*, however, § 8128(b) is an extremely broad prohibition on a court's ability

to review FECA determinations. *See* 5 U.S.C. § 8128(b).

The D.C. Circuit has held that "it is individual determinations that 'have traditionally been accorded more rather than less judicial protection against agency error than generally applicable rules.'" *Paluca*, 813 F.2d at 527, *citing Gott v. Walters*, 756 F.2d 902, 915 (D.C.Cir.1985). In this case, the § 8101(2) definition of physician is clearly a generally applicable rule, leaving little if any discretion to the hearing officer. Based upon the "unambiguous and comprehensive language" of § 8128(b) illustrating Congress' intention "to bar judicial review altogether," *Lindahl v. Office of Personnel Management*, 470 U.S. 768, 105 S.Ct. 1620, 84 L.Ed.2d 674 (1985), and the guidance of the D.C. Circuit, this Court finds that § 8128(b) bars judicial review of violations of a clear statutory mandate.[7] This leaves Reynolds' alleged constitutional violation for the Court's consideration.

Reynolds constitutional challenge to § 8101 is apparently based on his belief that the Secretary's exclusion of psychotherapists from § 8101 resulted in the deprivation of his Fifth Amendment right to due process. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). In order for a plaintiff to establish an actionable due process claim, facts must be alleged that (1) support a determination that the plaintiff has a constitutionally protected life, liberty,

mandate. *See McDougal–Saddler v. Herman*, 161 F.3d 198, 203 (3d Cir.1998).

**6.** In *Kyne*, the Court held that the National Labor Relations Board's certification of a collective bargaining unit directly conflicted with a provision of the National Labor Relations Act, thus establishing judicial review by the district court even though the Act clearly delineated when the district court had jurisdiction. *See Kyne*, 358 U.S. at 188, 79 S.Ct. 180.

**7.** This Court points out that even without the statutory bar to judicial review, deference must be given to the Secretary's interpretation of FECA. *See Woodruff v. United States Dep't of Labor*, 954 F.2d 634 (11th Cir.1992). Furthermore, reviewing the Secretary's action in the instant case would not provide Reynolds with

relief. Reynolds alleges that the Secretary has the duty to interpret § 8101(2) consistently with the Supreme Court's decision in *Jaffee v. Redmond*, 518 U.S. 1, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996). In *Redmond*, the Court recognized a psychotherapist-patient privilege. Reynolds argues that this decision requires the Secretary to include psychotherapists within the language of § 8101(2). Yet it is clear that the recognition of a privilege by the Supreme Court in no way limits the ability of the Secretary to define or interpret who classifies as a "physician" for purposes of FECA awards. Because the only basis for the alleged violation of the statutory mandate is premised on the defendant's failure to consider *Redmond*, there is no cognizable violation.

or property interest, *see Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); and (2) the conduct complained of has deprived the claimant of that interest without constitutionally adequate procedure. *See Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 428, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982).

▋ The first step in accessing Reynolds' due process challenge is whether he has a constitutionally protected property interest in receiving FECA benefits. As the court in *Jones–Booker v. United States* noted, in order to have a property interest protected by the Fifth Amendment, courts must determine whether "an independent source," such as FECA, establishes a "legitimate claim of entitlement" to compensation. 16 F.Supp.2d 52, 59 (D.Mass.1998). Whether a legitimate claim exists depends upon the amount of discretion afforded to ECAB under the statute. *See id.* In *Jones–Booker,* the court found that FECA creates a property interest based upon the mandatory language in the statute that restricts ECAB's discretion to award compensation payments.[8] Based upon the plain text of FECA, this Court is in agreement with *Jones–Booker* that the statute's mandatory quality creates a legitimate property interest for receiving compensation benefits.

The second step of the analysis requires a determination of what process Reynolds is due. Due process is "flexible" and requires balancing three distinct factors. *See id.* The first consideration is the private interest that will be affected by the official action. *See id.* Secondly, this court must consider the risk of an erroneous deprivation of "such interest through the procedures used, and the probative value, if any, of additional or substitute procedural safeguards." *Id.* Finally, the Government's interest must be assessed, taking into account the fiscal and administrative burdens the additional or substitute procedural requirement would entail. *See id.* Thus, in determining whether due process was properly afforded to a claimant, the court must weigh the costs and benefits of the disputed procedure. *See United States v. Woods,* 931 F.Supp. 433, 439 (E.D.Va.1996).

▋ In the instant case, Reynolds had numerous opportunities to be heard. Reynolds brought in several medical experts who qualified under the conscripts of § 8101. Unfortunately for Reynolds, however, none of these qualified medical practitioners could establish the requisite nexus between his injury and the workplace environment. It seems disingenuous to accept Reynolds' argument that because none of the accepted medical experts could establish the requisite nexus, that the failure to acknowledge a nonrecognized expert by ECAB is somehow violative of his due process. Reynolds had a fair opportunity to present evidence of his work-related injury.[9] A statute that defines who can provide probative medical evidence of a work-related injury does not create a statutory entitlement to bring whatever witness Reynolds chooses. Because Reynolds had every opportunity to select a medical practitioner that fit the statutory definition, he had sufficient notice and opportunity to be heard such that the exclusion of an expert outside of the statutory definition did not

---

8. In making the determination of whether FECA has mandatory language, the court focused on § 8102(a), which provides:
 The United States shall pay compensation as specified by this subchapter for the disability or death of an employee resulting from personal injury sustained while in the performance of his duty, unless the injury or death is—
 (1) caused by willful misconduct of the employee;
 (2) caused by the employee's intention to bring about the injury or death to himself or of another; or
 (3) proximately caused by the intoxication of the injured employee.

5 U.S.C. § 8102(a) (emphasis added).

9. The Court notes that somewhat less due process may be required in FECA determinations that in other entitlement proceedings. For instance, in *Woods,* the court, comparing social security benefits with welfare benefits, noted that the hardship for a denial of ECAB benefits is "less significant" because the claimant "could have recourse to other government entitlement programs if the loss" of workers' compensation places the individual below the subsistence level. 931 F.Supp. at 439.

violate his due process.[10]

### III.

For the reasons stated above, defendants' motion to dismiss is **GRANTED.** An order consistent with this opinion will issue this same day.

---

**10.** Because this Court holds that § 8101 is unreviewable except for constitutional violations, and finds no cognizable due process violations in the instant case, there is no need to determine whether the individual defendants can claim qualified immunity.