Michael WACKS, Plaintiff,

v.

Robert REICH, U.S. Secretary of Labor, Defendant.

Civil No. 3:94cv01533 (PCD).

United States District Court, D. Connecticut.

Dec. 16, 1996.

Richard M. Franchi, Alan E. Silver, P.C., New Haven, CT, for Plaintiff and Counter–Defendant.

John B. Hughes, Carolyn Aiko Ikari, U.S. Attorney's Office, New Haven, CT, Althea E. Seaborn, U.S. Attorney's Office, Bridgeport, CT, for Defendant and Counter–Claimant.

### *RULING ON PENDING MOTIONS*

DORSEY, District Judge.

Plaintiff Michael Wacks ("Plaintiff") sued Defendant Robert Reich, U.S. Secretary of Labor ("Defendant") in his official capacity for allegedly depriving Plaintiff of his right to worker's compensation benefits under the Federal Employees' Compensation Act ("FECA"). Plaintiff moved for summary judgment or alternatively for a dismissal of Defendant's counterclaim. Defendant moved for summary judgment on the counterclaim. For the following reasons, Plaintiff's motion for summary judgment and motion to dismiss are DENIED. Defendant's motion for summary judgment is GRANTED.

## I. BACKGROUND

Plaintiff is a former letter carrier for the United States Postal Service. During the course of his employment Plaintiff sustained injuries when he fell on ice-covered steps. Plaintiff applied for workers' compensation benefits pursuant to FECA under the Federal Employees' Office of Workers' Compensation Programs ("OWCP"). The OWCP determined that Plaintiff was entitled to receive temporary partial disability commencing February 8, 1974. Plaintiff ceased work per-

manently on November 23, 1974 and was paid compensation benefits on the basis of temporary total disability from that day until November 17, 1990.

In order for Plaintiff to continue receiving benefits under the federal workers' compensation program he was required to periodically submit CA–1032 forms to the Department of Labor disclosing any employment during the prior 15 months. On October 31, 1987 and January 10, 1989 Plaintiff submitted CA–1032 forms for the prior 15 months. On both forms Plaintiff represented that he had been unemployed during the previous 15 months. However, on a CA–1032 form dated January 10, 1990, Plaintiff stated that he had worked in his wife's business 3 or 4 times a month for the past 15 months and had received $40 each time.

Plaintiff was indicted in the United States District Court for the District of Connecticut for wilfully and knowingly filing false employment affidavit forms with the OWCP, in violation of 18 U.S.C. § 1001. On June 15, 1990, Plaintiff entered into a Plea Agreement in which Plaintiff stipulated that he was "actively involved in the day to day running of the coin/stamp and baseball card shows business" owned by he and his wife, which business generated "substantial income." Stipulation of the Offense Conduct, p. 4. Plaintiff also admitted that he "is no longer suffering from any physical, emotional or psychological disability of any kind arising out of or in any way connected to his employment at anytime by the United States Postal Service, and he agrees to immediately so notify the U.S. Department of Labor, Office of Workers compensation Programs." Plea Agreement, p. 4.[1]

Between June 15, 1990 and November 17, 1990, the OWCP sent Plaintiff six checks totaling of $8,812.86. By letter dated November 30, 1990, the OWCP informed Plaintiff that his entitlement to FECA benefits ceased effective June 15, 1990, based on Plaintiff's entry of the Plea Agreement stating that he was no longer disabled as a result of his federal employment.[2] The letter provided that Plaintiff's benefits were terminated effective November 18, 1990. Plaintiff did not request a hearing or appeal that decision.

A computer case history report, dated May 28, 1992, revealed the payments made to Plaintiff between June and November. On July 1, 1992, the Claims Examiner made a preliminary determination that an overpayment had been made to Plaintiff and that Plaintiff was at fault because he knew or should have known that he was not entitled to the payments based on the admission in his Plea Agreement that he was no longer disabled. The OWCP informed Plaintiff by letter of the amount of the overpayment, the reason for the overpayment, Plaintiff's fault in the matter and demanded reimbursement. The OWCP advised Plaintiff of his right to challenge the determination and of his right to request a hearing before the Department of Labor's Branch of Hearings and Review.

At Plaintiff's request a hearing was held on February 18, 1993. At the hearing Plaintiff testified under oath and was represented by counsel. Plaintiff argued that he was not at fault in the creation of the overpayment because the November 30, 1990 letter gave him the impression that his benefits did not cease until November 18. Transcript, Feb. 18, 1993 Hearing ("Transcript"), p. 4, pp. 7–9. Plaintiff also argued that he was disabled in June 1990 and remained disabled. Transcript, pp. 4, 6–7. Plaintiff alleged that he only entered into the Plea Agreement in order to avoid going to jail. Transcript, pp. 6–7. The Hearing Representative concluded that Plaintiff was at fault based on his voluntary entry into the Plea Agreement in which he acknowledged that he was no longer disabled due to his employment and, therefore, Plaintiff should have known that he was not entitled to FECA benefits as of that date.

---

1. Plaintiff failed to notify the Department of Labor that he was no longer disabled. However, the United States Attorney's Office informed OWCP of the entry of Plaintiff's guilty plea and the terms of that agreement.

2. Plaintiff alleges that he did not receive the notice until December 7, 1990. At the pre-re-

coupment hearing, Plaintiff also claimed that he received a different letter, which was not as clear as to the termination of compensation and did not refer to the Plea Agreement. Plaintiff has not raised that issue here, and the letter is not a part of the administrative record.

Decision of the Hearing Representative, p. 3.[3]

Plaintiff appealed the decision of the Hearing Representative. The Employees' Compensation Appeals Board ("ECAB") affirmed the decision finding that Plaintiff was at fault in creating the overpayment. July 26, 1994 Decision and Order, pp. 5–6. In rendering its decision, the appeals panel reviewed the administrative record including the benefits history, criminal information and plea, payment records, the OWCP correspondence with Plaintiff and the statutory and regulatory standards for determining fault in creating an overpayment. The ECAB rejected Plaintiff's claim that he remained disabled based on Plaintiff's admissions in the Plea Agreement and the evidence that Plaintiff was working in the day-to-day business owned by him and his wife. *Id.* p. 5.

Plaintiff instituted this action, alleging that the Secretary of Labor "did deprive the plaintiff of his statutory rights to Worker's Compensation benefits...." Amended Complaint ¶ 1. Plaintiff alleges that the final agency action of the Department of Labor regarding the overpayment was incorrect and improper because it was "against the weight of evidence" and "it ignored federal statutes and/or regulations concerning proceedings before the Department of Labor and found directly against said laws." *Id.* ¶¶ 12, 13(a), (b). Plaintiff seeks an order setting aside the decision and remanding the case for a hearing, or alternatively, for an order reversing the decision or for a trial de novo. Defendant filed a counterclaim for an award in the amount of the overpayment.

## II. DISCUSSION

### A. Motion to Dismiss

Plaintiff moves to dismiss Defendant's counterclaim on the basis that Defendant is the Secretary of Labor but the debt is claimed by the United States and, therefore, the counterclaim is improperly sought by a non-party. Plaintiff's motion to dismiss is moot in light the January 23, 1996 Order granting Defendant leave to file an amended answer: "As plaintiff is suing the U.S. Secretary of Labor in his official capacity, and thus, is essentially suing the United States, a counterclaim by the United States is appropriately included in the amended answer." January 23, 1996 Order. Plaintiff's motion to dismiss is denied.

### B. Standard for Summary Judgment

Summary judgment shall be granted when "the pleadings, depositions ... and admissions on file ... show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "'Properly employed, summary judgment allows the court to dispose of meritless claims before becoming entrenched in a frivolous and costly trial.'" *Diamantopulos v. Brookside Corp.*, 683 F.Supp. 322, 325 (D.Conn.1988) (citing *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9 (2d Cir.1986)). The moving party bears the initial burden of establishing that there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). An issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510. A factual issue is "material" if it "might affect the outcome of the suit under the governing law...." *Id.*

Once the movant has satisfied its burden, the party opposing summary judgment

---

**3.** 20 C.F.R. § 10.320(b) provides in pertinent part: "An individual is with fault in the creation of an overpayment who ... accepted a payment which the *individual knew or should have been expected to know was incorrect.*" (emphasis added). In considering whether an individual is without fault in the creation of an overpayment, 20 C.F.R. § 10.320(c) provides:

"Whether an *individual is 'without fault'* depends on all the circumstances surrounding the overpayment in the particular case. The Office will consider the individual's understanding of any reporting requirement, the agreement to report events affecting payments, knowledge of the occurrence of events that should have been reported, efforts to comply with the reporting requirements, opportunities to comply with the reporting requirements, understanding of the obligation to return payments which were not due, and ability to comply with any reporting requirements...."

" 'must set forth specific facts showing that there is a genuine issue for trial.' " *Id.* at 250, 106 S.Ct. at 2511. The non-movant may not merely rest on the allegations and denials in the pleadings but must establish, via affidavits, depositions, answers to interrogatories and admissions on file, a genuine issue of material fact exists. *Id.* at 248, 106 S.Ct. at 2510. In considering a motion for summary judgment all reasonable inferences must be drawn in favor of the nonmoving party. *Id.* at 255, 106 S.Ct. at 2513–14.

### C. Subject Matter Jurisdiction

■ Subject matter jurisdiction was only mentioned briefly in a footnote in Defendant's motion and was not mentioned at all in Plaintiff's motion. However, "[t]he fact that neither party contested the District Court's authority to hear ... the case does not act to confer jurisdiction on the Court since a challenge to subject matter jurisdiction cannot be waived and may be raised sua sponte by the district court...." *Alliance of American Insurers v. Mario Cuomo,* 854 F.2d 591, 605 (2d Cir.1988) (citations omitted).

■ Plaintiff alleges subject matter jurisdiction under 5 U.S.C. § 704 (Administrative Procedure Act) and 28 U.S.C. § 1331 (federal question jurisdiction). "The APA ... does not provide an independent jurisdictional basis; it only prescribes the standards for reviewing agency action once jurisdiction is otherwise established." *Staacke v. U.S. Secretary of Labor,* 841 F.2d 278, 282 (9th Cir.1988). (citation omitted). Additionally, "section 1331 does not automatically confer jurisdiction in all cases involving federal statutes." *Id.* at 280. "[F]ederal question jurisdiction [is] 'subject ... to preclusion-of-review statutes created or retained by Congress." *Id.* FECA contains such a preclusion-of-review provision:

> The action of the Secretary or his designee in allowing or denying a payment under this subchapter is—(1) final and conclusive for all purposes and with respect to all questions of law and fact; and (2) not subject to review by another official of the United States or by a court by mandamus or otherwise.

5 U.S.C. § 8128(b).

"The plain meaning of section 8128 shows Congressional intent to bar judicial review altogether.' " *Brumley v. U.S. Dept. of Labor,* 28 F.3d 746, 747 (8th Cir.1994) (citing *Lindahl v. Office of Personnel Management,* 470 U.S. 768, 779–80 & n. 13, 105 S.Ct. 1620, 1627–28 & n. 13, 84 L.Ed.2d 674 (1985)). "When all that a claimant is seeking is benefits on the basis of an error of fact or law by the administering agency, judicial review is barred altogether." *Czerkies v. U.S. Dept. of Labor,* 73 F.3d 1435, 1441 (7th Cir. 1996). *Accord: Rodrigues v. Donovan,* 769 F.2d 1344, 1347 (9th Cir.1985) ("[s]ection 8128(b) of FECA precludes judicial review of an action of the Secretary 'in allowing or denying a payment' "); *Staacke,* 841 F.2d at 281 ("Federal courts have no jurisdiction to review final judgments of the Secretary of Labor and his officers in these statutory matters, regardless of whether other, more general, statutes might seem to grant such jurisdiction") (citations omitted).

■ However, section 8128(b) does not "immunize [the Department of Labor] from judicial review when its actions violate the Constitution or a clear statutory mandate." *Brumley,* 28 F.3d at 747 (citations omitted). *Accord: Owens v. Brock,* 860 F.2d 1363, 1367 (6th Cir.1988) ("[e]xcept for cases alleging that the Secretary violated a claimant's constitutional rights or exceeded the scope of his congressional mandate, courts have unanimously held that section 8128(b) prohibits judicial review of FECA benefit determinations") (citations omitted). Accordingly, to the extent Plaintiff seeks a review of the denial of benefits, there is no subject matter jurisdiction. However, to the extent Plaintiff challenges the procedures used in terminating his benefits as violating the Constitution or a clear mandate from Congress, there is jurisdiction.[4]

---

**4.** The Second Circuit has not addressed the exceptions to the preclusion-of-review statute in FECA. The reasoning employed by other federal courts in carving out exceptions for Constitutional violations and violations of a clear statutory mandate is persuasive and those exceptions are hereby adopted.

Here, Plaintiff challenges the correctness of the OWCP's decision under § 8129, following the pre-recoupment hearing, that there was an overpayment made to Plaintiff. Courts do have jurisdiction to consider claims relating to overpayment determinations under § 8129. "Section 8129 does not provide [the United States] with final authority nor does it bar judicial review." *U.S. v. Vetti*, 681 F.Supp. 986, 991 (D.Conn.1988). Accordingly, FECA does not preclude claimants from contesting the amount of the overpayment, that it would be against equity or good conscience to order them to repay the benefits already received, *id.* at 991, or that they were not at fault in creating the overpayment. However, Plaintiff does not dispute the overpayment decision as such. Plaintiff does not dispute that he received six checks totaling $8,812.86. Additionally, although Plaintiff argued at the pre-recoupment hearing that he was not at fault in the overpayment, Plaintiff has not challenged that finding here.

The crux of Plaintiff's challenge here is that he was, and is, disabled and, therefore, his benefits should not have been terminated and there can be no overpayment. Indeed, if raised, "the correctness of the decision to deny or terminate compensation," shall be determined at the pre-recoupment hearing. 20 C.F.R. § 10.321(g). However, Plaintiff is attempting to use the recoupment section in FECA to obtain judicial review of his denial of benefits. Although § 8129 does not preclude judicial review of the correctness of the overpayment determination, that section may not be used to obtain review in a judicial forum of a denial of benefits, which Congress unambiguously mandated are not subject to judicial review. Accordingly, to the extent Plaintiff seeks to have the OWCP's decision to terminate his benefits reviewed, his claims must fall within one of the exceptions to the preclusion-of-review provision in FECA.

### 1. Constitutional Violation

Plaintiff's amended complaint does not even hint at a Constitutional violation.

Plaintiff does cite in his motion for summary judgment, without providing any analysis, *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) and *U.S. v. Vetti*, 681 F.Supp. 986 (D.Conn.1994), which cases involved due process claims relating to a termination of benefits. However, Plaintiff does not cite the foregoing cases for the proposition that his Constitutional right to procedural due process was violated. There is no mention of a Constitutional violation in any of the pleadings or other filings in this case. Instead, Plaintiff apparently cites the preceding authority to support his contention that the OWCP's decision was against the weight of the evidence. Memorandum in Support of Motion for Summary Judgment, pp. 5–7. Accordingly, as the issues were framed by the parties there is no alleged Constitutional violation upon which to predicate jurisdiction.[5]

### 2. Violation of a Clear Statutory Mandate

Plaintiff's amended complaint does not specifically allege that there was a violation of a "clear statutory mandate." Plaintiff does allege, albeit in a conclusory manner, that the decision of the OWCP "ignored Federal Statutes and/or regulations concerning proceedings before the U.S. Department of Labor and found directly against such laws." Amended Complaint, ¶ 13(b). Arguably, Plaintiff's allegations fall within the "clear statutory mandate" exception. However, Plaintiff's moving papers demonstrate that his claims are "so attenuated and unsubstantial as to be absolutely devoid of merit." *Czerkies v. U.S. Dept. of Labor*, 833 F.Supp. 686, 687 (N.D.Ill.1993), *aff'd*, 73 F.3d 1435 (7th Cir.1996) (meritless claims of Constitutional deprivation is insufficient to circumvent FECA's preclusion of review provision) (citing *Paluca v. Secretary of Labor*, 813 F.2d 524, 526 (1st Cir.1987)).

Plaintiff claims that the OWCP violated 20 C.F.R. § 10.110(c) and 20 C.F.R.

---

5. Even if Plaintiff had alleged a Constitutional violation on the basis that he was not given a pre-termination hearing, such a claim would not survive. *See, supra*, pp. 11–12.

§ 10.111 in terminating his benefits. The regulations promulgated by the Secretary of Labor do not constitute a clear statutory mandate from Congress. *See Brumley*, 28 F.3d at 748 ("given the broad policy-making authority to administer and enforce FECA, the DOL's regulatory interpretation of section 8105(a) does not violate a clear statutory mandate") (citation omitted). As such, Plaintiff's claims that the OWCP violated the Code of Federal Regulations do not bring Plaintiff's claims within the "clear statutory mandate" exception to the preclusion-of-review statute.

■ Plaintiff also claims that the OWCP violated 5 U.S.C. § 8128, § 8124, § 8123(a). Plaintiff does not set forth how § 8128 was violated. Section 8128 provides that the Secretary may review an award granting or denying benefits at any time and that the Secretary's award is final and not subject to judicial review. Plaintiff's unsubstantiated claim that § 8128 was violated is insufficient.

■ Section 8124 provides that a claimant not satisfied with a decision of the Secretary is entitled to a hearing upon a request made within 30 days of the decision the claimant wishes to challenge. The regulations promulgated by the Secretary of Labor provide that "[o]nce the Office has accepted a claim and paid compensation, it has the burden, before terminating or reducing compensation, of establishing by the weight of the evidence that the disability for which compensation was paid has ceased...." 20 C.F.R. § 10.110(c). However, the ECAB has interpreted this regulation as placing the burden of proof upon the Office "only in those cases where an employee continues to claim entitlement to such benefits as a result of an employment-related condition.... Once an employee is receiving benefits under the Act, he is under no obligation to continue to receive such benefits." *In re Royals*, ECAB Decision No. 88–449 at 7–8 (Sept. 29, 1988).[6]

When a claimant admits that they are not disabled, the OWCP is not required to pro-

vide them with a hearing. The OWCP was entitled to rely on Plaintiff's sworn statement that he was no longer disabled and was actively employed in terminating his benefits. A review of the administrative record reveals that Plaintiff did not request a hearing or challenge the termination of his benefits when he received notice by letter dated November 30, 1990. Furthermore, Plaintiff ultimately did request and participate in the pre-recoupment hearing in which Plaintiff challenged the termination of his benefits. 20 C.F.R. § 10.321(g).

Plaintiff also contends that the OWCP violated § 8123 because the Hearing Representative did not consider any medical evidence at the pre-recoupment hearing. Plaintiff alleges that the Hearing Representative improperly only considered Plaintiff's prior statement that he was no longer disabled. As a "lay person" Plaintiff argues that he is incapable of evaluating his medical condition.

Pursuant to 20 C.F.R. § 10.321(g), when an overpayment exists because benefits were terminated, the Hearing Representative must determine all issues raised at the overpayment hearing, including those regarding the correctness of the decision to terminate benefits. However, § 8123 does not require the OWCP to independently obtain medical evidence. Instead, § 8123 relates to the obligation of an employee seeking benefits to submit to an examination by a United States' medical officer. In addition, the regulations to FECA provide that in conducting the hearing, the hearing representative:

> may conduct the hearing in such manner as best to ascertain the rights of the claimant. For this purpose, the representative shall receive such *relevant evidence as may be adduced by the claimant* and shall, in addition, receive such other evidence *as the representative may determine to be necessary or useful in evaluating the claim.*

20 C.F.R. § 10.133 (emphasis added). Plaintiff was advised that he should be prepared

---

6. The Secretary's interpretation of FECA must "'presumptively be afforded'" deference since "[t]he Secretary is vested with broad policy-making authority to 'prescribe rules and regulations necessary for the administration and enforcement' of FECA." *Woodruff v. U.S. Dept. of Labor*, 954 F.2d 634, 640 (11th Cir.1992).

at the overpayment hearing to present any new evidence or arguments that he may have. July 1, 1992 letter. A review of the administrative record reveals that Plaintiff did not offer, or request to offer, any evidence of medical reports of his condition.

■ Although the OWCP's procedures generally entail gathering medical evidence, § 8123 does not evince a clear Congressional mandate that the OWCP independently obtain medical evidence when considering an overpayment. Accordingly, Plaintiff has not alleged the violation of a clear statutory mandate of Congress upon which to predicate jurisdiction to review the termination of his benefits.[7]

## III. CONCLUSION

For the foregoing reasons, Plaintiff's motion to dismiss (Doc. # 36–2) and motion for summary judgment (Doc. # 36–1) are DENIED. Defendant's motion for summary judgment (Doc. # 38–1) is GRANTED. Plaintiff's Amended Complaint is dismissed. Judgment is entered for Defendant on the counterclaim in the amount of $8,812.86.

SO ORDERED.

---

7. Plaintiff is not without recourse. As conceded by Defendant, there is nothing to prevent Plaintiff from submitting a claim for benefits under FECA at this time and presenting whatever evidence he deems relevant.