Donald JONES–BOOKER, Plaintiff,

v.

UNITED STATES of America, and the Secretary of Labor, Department of Labor, Defendants.

Civil No. 97CV10616–PBS.

United States District Court,
D. Massachusetts.

Feb. 27, 1998.

**54**

Frank J. Ciano, Cambridge, MA, for Plaintiff.

Assistant United States Attorney Andrew L. Freeman, Boston, MA, for Defendant.

FINDINGS AND RECOMMENDATION ON *(1) Defendants' Motion to Dismiss or, Alternatively, for Summary Judgment; (2) Plaintiff's Motion for Summary Judgment or for Remand for Further Administrative Proceedings*

ALEXANDER, Chief United States Magistrate Judge.

Parties appeared before this Court on the above motions. Attorney Ciano appeared on behalf of Plaintiff Donald Jones–Booker ("Jones–Booker") and Assistant United States Attorney Freeman appeared on behalf of Defendants United States of America, the Secretary of Labor, and the Department of Labor ("Defendants"). For the following reasons, Defendants' motion is hereby DENIED; Plaintiff's motion is hereby ALLOWED to the extent that this case is hereby remanded for further consideration consistent with this opinion.

Involved in the case sub judice are administrative actions taken pursuant to the Federal Employees Compensation Act ("FECA"), 5 U.S.C. § 8101 et seq. Enacted in 1916, FECA provides workers' compensation for federal civilian employees who are injured while in the performance of their duties. 5 U.S.C. § 8102(a). FECA is the exclusive remedy against the United States for any federal employee whose injuries fall within the scope of the statute, and precludes recovery in another direct judicial proceeding. 5 U.S.C. § 8116(c). As a workers' compensation statute, FECA's purpose is to provide comprehensive recovery that is quicker and more certain than can be obtained from tort suits. *United States v. Demko,* 385 U.S. 149, 151, 87 S.Ct. 382, 17 L.Ed.2d 258 (1966).

The Secretary of Labor is authorized to administer FECA, to promulgate rules and regulations that aid its administration, and to decide all questions arising under the statute. 5 U.S.C. § § 8145 and 8149.[1] Pursuant to § 8145(2), the Secretary has delegated responsibility for management of FECA to the Director of the Office of Workers' Compensation Programs ("OWCP").

The Director of the OWCP makes findings of fact to determine whether a claimant is entitled to compensation. 5 U.S.C. § 8124(a). According to FECA regulations,

A claimant has the burden of establishing by the weight of reliable, probative and substantial evidence that the claimed condition and the disability, if any, was caused, aggravated, or adversely affected by the claimant's Federal employment. As a part of this burden, the claimant must specify the employment incident or the factors or conditions of employment to which the injury, disease or disability is attributed, and must submit rationalized medical opinion evidence, based upon a complete and accurate factual and medical

---

1. 5 U.S.C. § 8145(a) mandates that

The Secretary of Labor shall administer, and decide all questions arising under, this subchapter. He may—
(1) appoint employees to administer this subchapter; and

(2) delegate to any employee of the Department of Labor any of the powers conferred on him by this subchapter.

5 U.S.C. § 8149 authorizes the Secretary of Labor to "prescribe rules and regulations necessary for the administration and enforcement of this subchapter"

background, showing causal relationship between the claimed condition and the Federal employment.

20 C.F.R. § 10.110.

To apply for compensation, a claimant must file a Notice of Occupational Disease and Claim for Compensation ("Form CA–2") with his superior or any official of the employing agency. 20 C.F.R. § 10.100. Form CA–2 must be accompanied by an employee statement that includes:

(1) A detailed history of the disease or illness with identification of part(s) of the body affected;

(2) Complete details of types of substances or conditions of employment believed responsible for the disease or illness;

(3) A description of specific exposures to substances or stressful conditions including locations, frequency and duration, and

(4) Whether the employee ever suffered a similar condition and, if so, full details of onset, history and medical care received with names and addresses of physicians rendering treatment.

*Id.*

The claimant must also submit

a medical report to the Office from the attending physician. The report should include: dates of examination and treatment; history given by the employee; findings; results of x-rays and laboratory tests; diagnosis; course of treatment; and the physician's opinion, with medical reasons, regarding causal relationship between the diagnosed condition(s) and the factors or conditions of the employment.

20 C.F.R. § 10.104.

If a claimant is unable to prosecute his own claim, he may appoint a representative to do so. According to 20 C.F.R. § 10.144, "[a] representative shall be entitled to present or elicit evidence and to make allegations as to facts and law in any proceeding affecting the claimant and to obtain information with respect to the claim to the same extent

as the claimant." The representative has authority to prosecute the claimant's appeal as well.

There are three ways a claimant may seek administrative review of a denial of compensation.

First, a claimant may, within thirty (30) days of the date the OWCP decision was issued, request a hearing before an OWCP representative or request that an OWCP representative review the written record. 5 U.S.C. § 8124.

Second, a claimant may, within one year of the date the OWCP decision was issued, request reconsideration. 5 U.S.C. § 8128.

Third, a claimant may, within one year of the date the OWCP decision was issued, file an appeal with the Employee Compensation Appeals Board ("ECAB"), an appellate arm of the Department of Labor. 5 U.S.C. § 8149.[2]

"The claimant may obtain review of the merits of the claim by—(i) showing that the Office erroneously applied or interpreted a point of law, or (ii) Advancing a point of law or a fact not previously considered by the Office, or (iii) Submitting relevant and pertinent evidence not previously considered by the Office." 20 C.F.R. § 10.138. The regulations clearly state that "the Office will not review under this subsection a decision denying ... a benefit unless the application is filed within one year of the date of that decision." *Id.*

While administrative review is available pursuant to the foregoing, judicial review of the Secretary of Labor's findings of fact or law is explicitly precluded under FECA. Section 8128(b) provides that

The actions of the Secretary or his designee in allowing or denying a payment under this subchapter is—

(1) final and conclusive for all purposes and with respect to all questions of law and fact; and

---

**2.** 5 U.S.C. § 8149 requires that "[t]he rules and regulations [prescribed by the Secretary] shall provide for an Employee's Compensation Appeals Board of three individuals designated or appointed by the Secretary with authority to hear

and, subject to applicable law and the rules and regulations of the Secretary, make final decisions on appeals taken from determinations and awards with respect to claims of employees...."

(2) not subject to review by another official of the United States or by a court by mandamus or otherwise. . . .

5 U.S.C. § 8128(b).

■ Although § 8128 substantially bars judicial review, constitutional violations do not fall within its reach. *See Czerkies v. United States Dep't of Labor*, 73 F.3d 1435, 1439 (7th Cir.1996) (stating that door closing provisions do not close the door to colorable constitutional claims provided the claimant does not seek monetary relief); *see also Paluca v. Secretary of Labor*, 813 F.2d 524, 525 (1st Cir.1987)(" § 8128(b) . . . does not impede the adjudication by the courts of constitutional issues . . . ."). Given the aforementioned legal backdrop, it is beyond peradventure that a claimant must assert a colorable constitutional claim in order for this Court to have jurisdiction and, given the ensuing discussion, this Court so finds.

Factual. The plaintiff, Donald Jones–Booker, was employed for nineteen (19) years as a program analyst by the Office of Public Housing, Department of Housing and Urban Development until August, 1990. On or about August 14, 1990, Jones–Booker's co-workers noticed that his speech had become slurred to the point that they could no longer understand him. On August 20, 1990, Jones–Booker was admitted to Brigham and Women's Hospital where he remained until September 5, 1990.

While at Brigham and Women's Hospital, Dr. Peter Amsterdam determined that Jones–Booker had suffered a stroke resulting in "nonfluent aphasia with tremendous word finding difficulties" and "severely diminished" strength in the "right upper extremity." Though Jones–Booker's comprehension "for the most part was intact," he was "unable to name or repeat words" and did not have the ability "to express language either spoken or written."

On October 23, 1990, Mrs. Jones–Booker filed Form CA–2 on Jones–Booker's behalf. Jones–Booker's CA–2 shows that he became aware that his stroke was caused or aggravated by his employment on August 14, 1990. In response to question # 13 which asks the claimant to "[e]xplain the relationship to your employment, and why you came to this realization[,]" Mrs. Jones–Booker wrote

I am right handed, have lost use of same and suffered serious oral speech capacity: presently receiving therapy for same. My work is sedentary, must communicate orally with co-workers and use personal computer equipment continually.

On May 4, 1991, the OWCP issued an order that denied Jones–Booker's claim because the OWCP claimed that the record showed no evidence of a causal relationship between Jones–Booker's employment and his stroke. OWCP referred to Jones–Booker's CA–2 which it felt did not adequately state why Jones–Booker's employment was responsible for his stroke. OWCP also noted the fact that the only medical report in the record at the time was the October 10, 1990 report,[3] absent any communication by the Plaintiff, submitted by Dr. Amsterdam in which he stated "[i]t is very unlikely that this event was related in any way to the patient's occupation and it was merely a coincidence that this event occurred at work."

---

**3.** Defendants' memorandum only cites to Dr. Amsterdam's October 10, 1990 report. Yet, as part of Defendants' memorandum, Defendants submit a declaration by Michael Harvill in which Mr. Harvill states, under pain of perjury, that a "true and correct" copy of the medical report received by the OWCP during Jones–Booker's initial review "is attached hereto as Exhibit 2." Harvill Dec. ¶ 4. Attached to the October 10 report and part of Exhibit 2 is a November 6, 1990 report by Dr. Amsterdam in which he goes into great detail about Jones–Booker's inability to communicate. *See* Nov. 6, 1990 Amsterdam Report at 2 ("[Jones–Booker] was unable to name or repeat words, and there were severe paraphrasias and perseverations"); *id.* ( . . . "[Jones–Booker] underwent intensive rehabilita-

tion, but really made no significant gains in language ability. . . ."); *id.* at 3 (as of October 12, 1990, Jones–Booker "continued to have a very dense expressive aphasia."); *id.* ("[Jones–Booker] will likely continue to have a dense expressive aphasia. . . ."); *id.* ("The patient's current disability will prevent him from carrying on the job he had prior to the stroke . . . given his inability to be able to express language either spoken or written."); *id.* ("[Jones–Booker] has shown no evidence at this point over 2 months of any substantial improvement . . . in his language . . . , and, therefore, it is unlikely that he will improve substantially in this regard in the future."); *id.* ("The expected date of full or partial recovery is never. [Jones–Booker] probably will not substantially improve from his current status.").

Jones–Booker did not request reconsideration of the May 4, 1991 decision until November 22, 1993. The OWCP denied Jones–Booker's request because it was filed after the one-year limitations period had already expired. Pursuant to FECA regulations, however, OWCP did review Jones–Booker's record to see if it presented "clear evidence of error",[4] obviously a higher standard than his initial request.

In the November 22, 1993 request, Jones–Booker enclosed a medical report prepared by Dr. Lawrence Baker. Dr. Baker stated that he had examined Jones–Booker on March 2, 1993. During that examination, Jones–Booker indicated[5] that his job involved a great deal of emotional distress, and that at the time of his stroke, Jones–Booker had adult-onset diabetes, hypertension, and was a heavy smoker. Dr. Baker reported the following:

> Although one recognizes the predisposition to atherosclerotic disease in patients who have diabetes and hypertension and smoke, one cannot obviate the effects of severe emotional stress in terms of acceleration of that atherosclerotic disease process, particularly involving the internal carotid artery.... In summary, I do find probable causal relationship between Mr. Booker's work for HUD with the perceived emotional stresses affiliated with that work, and his development of a disabling stroke.

The OWCP, however, gave Dr. Baker's report diminished probative value because the OWCP claimed that Dr. Baker provided no rationale for his conclusion that a causal relationship existed between Jones–Booker's employment and his disability.[6] Accordingly, the OWCP found that Dr. Baker's report did not present clear evidence of error and, therefore, denied Jones–Booker's request for reconsideration on the merits.

On March 7, 1994, Jones–Booker filed an appeal with ECAB. Jones–Booker argued that the one-year limitations period for filing a request for reconsideration should have been tolled due to his incapacity.[7] On May 2, 1995, ECAB affirmed OWCP's denial of Jones–Booker's claim and added that *"incompetency coupled with the lack of a duly appointed legal representative may toll the one-year time limitation for filing an application for review."* (Emphasis added). ECAB held that Jones–Booker failed to establish his mental incompetency and, therefore, the limitation period could not be tolled in his case. In addition, ECAB agreed with OWCP's finding that Dr. Baker's report lacked rationale to support his finding of a causal relationship.

Jones–Booker filed a request for reconsideration of ECAB's May 2, 1995 decision and requested that he be allowed to present a video deposition of Dr. Baker and of himself. The Director of OWCP also filed an appeal seeking modification of ECAB's holding that the limitations period could be tolled if a claimant made a showing of incompetency and also lacked legal representation. The Director claimed that the holding was contrary to ECAB precedent.

---

**4.** This is meant to be a very high standard. "To show clear evidence of error, the evidence submitted must not only be of sufficient probative value to create a potential conflict in medical opinion or establish a clear procedural error, but must be of sufficient probative value to prima facie shift the weight of the evidence in favor of the claimant and raise a substantial question as to the correctness of the Office decision." May 2, 1995 ECAB Op., at 5.

**5.** Through therapy and treatment, Jones–Booker regained the power to communicate prior to Dr. Baker's examination.

**6.** Even if OWCP held that Dr. Baker's opinion was probative and that it was based on a well-grounded rationale, it still would not have suf-

ficed to overcome the "clear evidence of error" standard. "Evidence such as a detailed, well-rationalized medical report which, if submitted prior to the Office's denial, would have created a conflict in medical opinion requiring further development, is not clear evidence of error and would not require review of the case...." May 2, 1995 ECAB Op., at 4 n. 7 (citing Federal (FECA) Procedure Manual, Part 2—Claims, *Reconsiderations*, Chapter 2–1602.3.b (May 1991)).

**7.** Jones–Booker's argument is based on (1) his inability to communicate and (2) his inability to understand the consequences of failing to file an appeal. Because this Court decides this matter on Jones–Booker's inability to communicate, it makes no finding regarding Jones–Booker's second argument.

On September 6, 1996, ECAB denied Jones–Booker's request for reconsideration because Jones–Booker's petition raised contentions already advanced and considered. Not unexpectedly, ECAB granted the Director of OWCP's request for modification, however, finding that (a) under § 8218, OWCP has discretion to impose a one-year limitation period and (b) the Secretary did not abuse his discretion by promulgating regulations that denied tolling of the limitations period for any reason because the regulations were not in conflict with the intent of FECA. Jones–Booker asserts that the OWCP's refusal to toll the one-year limitations period violated his right to due process.

Defendants move to dismiss or, in the alternative, for summary judgment because they contend that Jones–Booker has not presented a substantial and cognizable constitutional claim, and, therefore, this Court lacks jurisdiction over the case sub judice.

■■■ This Court first addresses the standard of review for Defendants' motion. Although, in passing on a 12(b)(1) [8] motion to dismiss for lack of subject matter jurisdiction, "the allegations of the complaint should be construed favorably to the pleader[,]" *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), it is plaintiff's burden to prove the existence of subject matter jurisdiction. *Murphy v. United States,* 45 F.3d 520, 522 (1st Cir.), *cert. denied,* 515 U.S. 1144, 115 S.Ct. 2581, 132 L.Ed.2d 831 (1995). A district court has "very broad discretion in determining the manner in which it will consider the issue of jurisdiction." *Valedon Martinez v. Hospital Presbiteriano de la Comunidad, Inc.,* 806 F.2d 1128, 1132 (1st Cir.1986). Accordingly, in deciding a motion to dismiss, a district court may (1) consider whatever evidence has been submitted, such as depositions and exhibits, *Aversa v. U.S.,* 99 F.3d 1200, 1209–10 (1st Cir.1996), (2) consider "arguments not raised in the parties' memoranda[,]" *Daigle*

*v. Friendly Ice Cream Corp.,* 957 F.Supp. 8, 9 n. 2 (D.N.H.1997), and (3) resolve factual disputes if necessary, *id.* (citing *Watkins v. Dave & Buster's, Inc.,* 1996 WL 596405, at *1 (N.D.Ill.1996)).[9]

■■ As an initial matter, it should be noted that a plaintiff need not have raise a "substantial" constitutional question as Defendants here contend. Rather, "[d]ismissal of the complaint upon the ground of lack of jurisdiction of the subject matter [is] justified only if that claim [is] 'so attenuated and unsubstantial as to be absolutely devoid of merit,' or 'frivolous.' " *Baker v. Carr,* 369 U.S. 186, 199–200, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). Therefore, in order for this Court to assert jurisdiction, plaintiff must only allege a *more than insubstantial* constitutional claim; there is no requirement that Booker present a *substantial* constitutional claim as Defendants contend, though some may consider his claims as substantial. *Accord Paluca,* 813 F.2d at 527 (remanding because the Secretary's defense was not "strong enough to render the plaintiff's equal protection challenge 'wholly insubstantial.' "). Consequently, this Court now determines whether the facts herein constitute a nonfrivolous constitutional claim.

■ The Due Process Clause of the Fifth Amendment [10] protects individuals from mistaken deprivations of life, liberty, or property by requiring the federal government to provide persons in jeopardy of loss with certain procedural safeguards. Consequently, to state an actionable procedural due process claim, plaintiff must allege facts (1) that support a determination that the plaintiff has a constitutionally protected life, liberty, or property interest, *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and (2) that the conduct complained of has deprived her of that interest without constitutionally adequate procedure. *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 428, 102 S.Ct. 1148, 71 L.Ed.2d 265

8. Rule 12(b)(1) provides that a complaint can be dismissed for "lack of jurisdiction over the subject matter." Fed.R.Civ.P. 12(b)(1).

9. If jurisdictional issues cannot be separated from the merits of the case, then consideration of matters outside the pleadings transforms the mo-

tion into one for summary judgment. *Espinosa v. DeVasto,* 818 F.Supp. 438 (D.Mass.1993).

10. "nor shall any person ... be deprived of life, liberty, or property, without due process of law"

(1982); *see also PFZ Properties v. Rodriguez,* 928 F.2d 28, 30 (1st Cir.1991).

■ Clearly then, Booker is entitled to due process only if he holds a constitutionally protected property interest in FECA disability benefits. *Roth,* 408 U.S. at 569, 92 S.Ct. 2701. The Supreme Court has stated that in order to have a "property interest," a person must have

> more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.... Property interests ... are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Id.* at 577, 92 S.Ct. 2701. Thus, to decide whether Jones–Booker has a property interest protected by the Fifth Amendment, this Court must look to an "independent source" such as FECA.

In order for FECA to create a constitutionally protected property interest, it must limit the discretion of the decision-makers.[11] As Justice O'Connor stated in *Board of Pardons v. Allen:*

> The *Roth* decision teaches that a mere expectation of a benefit ... is not sufficient to create an interest protected by procedural due process. Instead, the statute at issue must create an entitlement to the benefit before procedural due process rights are triggered.... [T]he distinction between an "entitlement" and a mere "expectancy" must necessarily depend on the degree to which the decision-makers' discretion is constrained by law. An individual simply has nothing more than a mere hope of receiving a benefit unless the deci-

sion to confer that benefit is in a real sense channeled by law....

482 U.S. 369, 382, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987) (O'Connor, J., dissenting) (emphasis in original); *see also Beitzell v. Jeffrey,* 643 F.2d 870, 874 (1st Cir.1981)("the more circumscribed ... the government's discretion (under substantive state or federal law) to withhold a benefit, the more likely that benefit constitutes 'property'....").[12] Accordingly, this Court focuses on the degree of discretion afforded FECA's decision-makers.

Lower courts have looked to whether a statute has mandatory language in order to determine whether the statute limits a decision-maker's discretion such that it gives rise to a "legitimate claim of entitlement." *Compare Daniels v. Woodbury County,* 742 F.2d 1128, 1132 (8th Cir.1984) (finding mandatory language in Iowa relief statute created a "legitimate claim of entitlement and expectancy of benefits in persons who claim to meet the eligibility requirements") (citations and internal quotations omitted), *and Griffeth v. Detrich,* 603 F.2d 118, 121 (9th Cir. 1979), *cert. denied sub nom, Peer v. Griffeth,* 445 U.S. 970, 100 S.Ct. 1348, 64 L.Ed.2d 247 (1980) (holding that state code's mandatory language limited the discretion of intake workers and created legitimate expectations of payment in those who met prescribed standards), *with Jacobs Visconsi & Jacobs Co. v. City of Lawrence, Kansas,* 927 F.2d 1111, 1116 (10th Cir.1991) ("[S]tate law's requirement that zoning decisions be reasonable ... is insufficient to confer upon the applicant a legitimate claim of entitlement."); *Mahone v. Addicks Utility Dist. of Harris County,* 836 F.2d 921, 930–31 (5th Cir.1988) (finding no property interest where statute did not constrain otherwise broad discretion); and *Davis v. Ball Memorial Hosp. Ass'n,* 640 F.2d 30, 38 (7th Cir.1980) (indigent patients had no property right because regulations

---

11. Those charged with administering FECA.

12. Though the Supreme Court has not specifically held that mandatory language creates a *property* interest, the Court has found the existence of statutorily created liberty interests when the administrator's discretion is limited. *Compare Hewitt v. Helms,* 459 U.S. 460, 472, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983) (finding that "the repeated use of explicitly mandatory language in connection with requiring specific substantive

predicates demands a conclusion that the State has created a protected liberty interest"), *with Olim v. Wakinekona,* 461 U.S. 238, 249, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983) (finding no protected liberty interest where decision-makers were given "unfettered" discretion to transfer inmates for "any constitutionally permissible reason or for no reason at all") (citations and internal quotations omitted).

did not mandate assistance when eligibility was found). Therefore, this Court considers whether FECA has mandatory language that restricts the discretion of its decision-makers such that claimants have a "legitimate claim of entitlement" to FECA benefits.

Section 8102(a) provides that

The United States *shall* pay compensation as specified by this subchapter for the disability or death of an employee resulting from personal injury sustained while in the performance of his duty, unless the injury or death is—

(1) caused by willful misconduct of the employee;

(2) caused by the employee's intention to bring about the injury or death of himself or of another; or

(3) proximately caused by the intoxication of the injured employee.

5 U.S.C. § 8102(a) (emphasis added). It is perspicuous from the text that, provided the claimant is able to establish a causal connection between the claimant's employment and the disability, the "decision-makers," with the above limited exceptions, *must* provide the claimant with benefits. Consequently, this Court finds that Jones–Booker has a property interest in FECA benefits.[13]

The fact that Jones–Booker is only an applicant for benefits rather than a recipient thereof does not alter the analysis. Though the issue of whether an applicant for benefits is entitled to the same process as a recipient whose benefits are revoked has not specifically been addressed by either the First Circuit or the Supreme Court, *see Lyng v. Payne*, 476 U.S. 926, 942, 106 S.Ct. 2333, 90 L.Ed.2d 921 (1986) (acknowledging that the Court has "never held that applicants for benefits, as distinct from those already receiving them, have a legitimate claim of entitlement protected by the Due Process Clause of the Fifth . . . Amendment"), "the weight of authority among lower courts is" that they have a property interest. *Gregory v. Town of Pittsfield*, 470 U.S. 1018, 1021, 105 S.Ct.

1380, 84 L.Ed.2d 399 (1985)(O'Connor, J., dissenting from denial of certiorari) (citations omitted). This Court joins in rejecting the "application/revocation" distinction. The Supreme Court's procedural due process jurisprudence turns on whether statutory provisions create a right, not whether benefits have been received in the past. *Roth*, 408 U.S. at 577, 92 S.Ct. 2701. Since this Court holds that FECA creates a property right, the fact that Jones–Booker is only an applicant for FECA benefits is of no moment.

■ Having decided that Jones–Booker has a constitutionally recognized property interest, this Court turns to the question of what process is due. At a minimum, the Constitution requires notice and some opportunity to be heard. *Joint Anti–Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 178, 71 S.Ct. 624, 95 L.Ed. 817 (1951). Beyond that, due process is "flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). What process is warranted in a given case depends on the balancing of three factors:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

■ This Court considers whether Booker had a meaningful opportunity to be heard in light of the *Mathews* factors. It should be noted from the outset, however, that because the record before this Court establishes that Jones–Booker did not have the ability to communicate in any way during at least part

---

**13.** Furthermore, this Court notes that Jones–Booker is a member of the class of persons FECA was intended to protect and benefit. *See Mallette v. Arlington County Employees' Supplemental Retirement System II*, 91 F.3d 630, 636 (4th Cir.1996)(stating that statute gives plaintiff more than an abstract desire for the benefits because plaintiff was a member of the class of persons statute was intended to protect.).

of the time in which the OWCP reviewed his claim, he has presented a more than insubstantial claim that he did not receive a meaningful opportunity to be heard. See *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 546, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985)("The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement."). Accordingly, Defendants' motion to dismiss for lack of subject matter jurisdiction is hereby DENIED. The exact dimensions of the remaining aspects of Booker's claims and whether his due process rights were violated are to be evaluated in the context of cross-motions for summary judgment.

Summary judgment is

appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the initial burden of showing that there is no genuine issue of material fact. *Id.* This burden may be met by establishing the absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-moving party to establish the existence of a genuine issue of material fact for trial. *Id.* The non-movant, however, may not rest upon mere allegation or denial of the pleadings. Instead, the non-moving party must produce some evidence of specific facts showing there is a genuine issue for trial. Fed.R.Civ.P. 56(e). A "genuine issue" exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In considering the motion, the Court must view the entire record in the light most favorable to the non-moving parties and indulge all reasonable inferences in their favor. *Continental Casualty Co. v. Canadian Universal Ins. Co.,* 924 F.2d 370, 373 (1st Cir. 1991).

■ Examining the facts of the case sub judice relative to the foregoing standard and in the *Mathews* framework reveals the following. First, the weight of Jones–Booker's interest in disability benefits is self-evident. Due to his disability, Jones–Booker is unable to perform tasks required of even a sedentary job. His welfare and the welfare of his family are completely dependent on government-sponsored benefits programs such as FECA. Denying Jones–Booker any payment clearly acts to his severe detriment.

Second, the fact that Jones–Booker could not possibly satisfy his burden of proof either to receive his benefits in the first place or for an opportunity to appeal his decision resulted in an unacceptable likelihood of error. Under the regulations governing FECA, a claimant satisfies his initial burden of showing "that the claimed ... disability ... was caused, aggravated, or adversely affected by the claimant's Federal employment" by *specifying* "the employment ... factors or conditions of employment to which the ... disability is attributed." 20 C.F.R. § 10.110 (emphasis added).

Moreover, 20 C.F.R. § 10.100 mandates that, along with a CA–2 form, a claimant must file an employee statement that includes: "... (2) *Complete details of types of ... conditions* of employment believed responsible for the disease or illness; [and] (3) A description of *specific exposures to ... stressful conditions including locations, frequency and duration ....*" (Emphasis added).

Clearly then, in order for a claimant to satisfy his burden, *he or his representative* must explain how the *frequency, location, and duration* of *specific* job conditions were causally related to his disability. Though the regulations call for a medical opinion to give a causal relationship as well, that medical opinion is supposed to be based in large part on a *complete* factual background *given by the employee.* Here, Jones–Booker did not have the ability to communicate in order to provide Dr. Amsterdam or his wife with the requisite information.

Defendants rely to a large extent on their contention that Mrs. Jones–Booker could have submitted the required information that would have allowed Jones–Booker to satisfy his burden. First, Defendants state that the fact that she initially filed for benefits on her husband's behalf leads to the conclusion that she could have made timely and proper application for the appeal as well; second, Defendants cite the manner in which she answered the questions on Jones–Booker's CA–2 pertaining to causation; and, third, Defendants claim that, as her husband's representative, Mrs. Jones–Booker had a strong interest in filing for an appeal on his behalf.

Defendants' arguments, however, either miss a critical step or are misplaced. The ability to file a timely appeal does not necessarily follow from the fact of an initial filing. The critical issue to this Court is whether the information Mrs. Jones–Booker had at the time she should have filed for an appeal was sufficient to permit a timely filing that could possibly satisfy her husband's burden of proof. The record before this Court provides no clarity that the information known to Mrs. Jones–Booker was sufficient to compel timely and proper filing because there is no evidence as to precisely when Jones–Booker regained the ability to communicate.[14] Dr. Amsterdam's report establishes the fact that Jones–Booker could not communicate.[15] Dr. Baker's report, however, states that Jones–Booker could communicate. Therefore, at some point between the time Dr. Amsterdam examined Jones–Booker and the time Dr. Baker examined him, Jones–Booker regained the ability to communicate. If that time fell within the one year limitation period for filing an appeal, then Mrs. Jones–Booker could have, and, therefore, should

have filed an appeal. Jones–Booker, however, should have been afforded the opportunity to present evidence of this without having to meet a higher standard.

Similar rationale leads this Court to give little weight to Defendants' reliance-in-part on the answer Mrs. Jones–Booker gave to question # 13 on Form CA–2.[16] Though Defendants apparently argue otherwise, Mrs. Jones–Booker could not answer the question according to the manner prescribed in the regulations.[17] Though Mrs. Jones–Booker could have described work hours or the amount of time her husband spent traveling in general terms, only he knew of the *specific* instances of stress related to his job and he *could not communicate that to his wife* because, as Doctor Amsterdam reported, Jones–Booker could neither read nor write. Therefore, under the circumstances, this Court fails to see how Mrs. Jones–Booker's answer detracts from her husband's allegations.

Mrs. Jones–Booker's lack of information *has even greater significance when considered relative to an application for appeal.* Two of the ways a claimant can get a review are if (1) he shows a matter of fact that the reviewing panel failed to consider or (2) he submits evidence that the reviewing panel did not have at the time of the claimant's review. Jones–Booker was notified that he had to meet one of these requirements in order to obtain a review. The facts that the panel could not possibly have examined at the time of Jones–Booker's application were the same facts that neither Mrs. Jones–Booker, nor any other individual except Jones–Booker, could possibly have submitted upon

---

**14.** ECAB notes this point on page 5 of its May 2, 1995 opinion when it stated that it was Jones–Booker's burden to show incompetence. This is of no moment here because, according to ECAB's September 6, 1996 decision, the limitations period cannot be tolled under any circumstances. That is, a finding of incompetence or inability to communicate would have no effect. Defendants claim that, notwithstanding Jones–Booker's delay, OWCP and ECAB still reviewed Jones–Booker's submissions for "clear evidence of error" and found none. From ECAB's own opinion, however, even well-rationalized medical opinion does not suffice to meet the "clear evidence of error standard." *See* discussion *supra*

note 7. The only evidence Jones–Booker could have submitted to overcome the standard was the evidence he was denied from the beginning— *his own testimony or written statement.*

**15.** *See supra* note 3.

**16.** *See* discussion *supra*, at 6.

**17.** As noted, the regulations require the claimant to show *specific* employment conditions which establish a causal relationship between the alleged disability and the claimant's job.

application for appeal.[18] That is, *a description of specific job stressors Jones–Booker felt either aggravated or caused his disability as required by the Secretary's own regulations.* Accordingly, unless Jones–Booker was able to communicate, it was not possible for him to meet his burden of securing an appeal on the merits.

Furthermore, Mrs. Jones–Booker's interest in filing for the appeal is not at issue here. If there was no possibility for Jones–Booker to meet the statutorily prescribed burden, then filing for an appeal would be futile notwithstanding her interest in obtaining benefits on her husband's behalf.

Due to the fact that Jones–Booker could not present evidence required under FECA regulations to satisfy his burden of establishing a causal connection between his employment and his disability, the risk of erroneous deprivation was intolerably high.[19] Accordingly, this factor of the *Mathews* test weighs heavily in Jones–Booker's favor.

Lastly, this Court reviews the Government's interest in "the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews.* Defendants claim that tolling the one year limitations period for filing an appeal would (1) defeat the purpose of the limitations period and (2) unduly burden the Government with the possibility of reviewing claims years after their initial filing.

■ Contrary to Defendants' assertions, equitably tolling the one-year limitations period in the circumstances presented here directly comports with the purposes of both FECA and the one-year limitations period, and would not unduly burden the Government. First, however, this Court determines whether the one-year limitations period is subject to tolling at all.

■ The Supreme Court has held that concerns of equity are grafted on to federal statutes of limitations. *Holmberg v. Armbrecht,* 327 U.S. 392, 397, 66 S.Ct. 582, 90 L.Ed. 743 (1946). Other courts have found two exceptions to the *Armbrecht* rule: statutes of repose, *Short v. Belleville Shoe Mfg. Co.,* 908 f.2d 1385 (7th Cir.1990), and jurisdictional statutes of limitations. *Hardin v. City Title & Escrow Co.,* 797 F.2d 1037, 1040–41 (D.C.Cir.1986). The limitation period at issue here is neither a jurisdictional limitations period [20] nor a statute of repose.[21] The language and purpose of the limitations period match well with that of a typical limitations period and the jurisdictional bar Defendants attempt to invoke is separate and apart from the one-year limitations period. That is, whether Booker presents a cognizable constitutional claim depends on whether the limitations period should have been tolled, not on the fact of its expiration. *See Short,* 908 F.2d at 1391 (finding that section 13 of Securities Exchange Act is a statute of repose because of the language used). Therefore,

---

**18.** This Court finds here an occasion in which the injury was not simply unknown, but "inherently unknowable even in retrospect." *Urie v. Thompson,* 337 U.S. 163, 169, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949).

**19.** "[T]he quantum and quality of the process due in a particular situation depends on the need to serve the purpose of minimizing the risk of error." *Greenholtz v. Inmates of Neb. Penal & Correctional Complex,* 442 U.S. 1, 13, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979).

**20.** In *Fenton v. Citizens Sav. Ass'n,* 400 F.Supp. 874, 879 n. 6 (W.D.Mo.1975), the court stated

Statutes of Limitations are distinguished from statutes which create a right of action not existing at common law and restrict the time within which action may be brought to enforce the right. A true statute of limitations extin-

guishes only the right to enforce the remedy and not the substantive right itself. The limitation of time for commencing an action under a statute creating a new right enters into and becomes a part of the right of action itself and is a limitation not only on the remedy but of the right also. The right to recover depends upon the commencement of the action within the time limit set by the statute, and if that period of time is allowed to elapse without the institution of the action, the right of action is gone forever.

**21.** "A statute of limitations is a procedural measure which 'normally governs the time within which legal proceedings must be commenced....' A statute of repose, on the other hand, 'completely eliminates a cause of action' after the time period established has run...." *McGuinness v. Cotter,* 412 Mass. 617, 591 N.E.2d 659 (Mass.1992) (citations omitted).

this Court finds that the one-year limitations period is subject to tolling.

▮▮▮▮▮ Next this Court addresses whether the limitations period should have been tolled in this instance; or, stated otherwise, whether failing to toll the one-year limitations period under the facts presented herein constituted a violation of Jones–Booker's rights to due process. "Equitable tolling just means that without fault by either party the plaintiff does not have enough information to sue within the period of limitations . . . ." *Tregenza v. Great American Communications Co.*, 12 F.3d 717, 721 (7th Cir.1993); *see also Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 452 (7th Cir.1990) ( "For equitable tolling all [plaintiff] need show is that he could not by the exercise of reasonable diligence have discovered essential information bearing on his claim.").[22] Determining whether equitable tolling applies under a given set of facts requires examining legislative intent. *Burnett v. New York Cent. R.R. Co.*, 380 U.S. 424, 426, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965) (citing *Midstate Horticultural Co. v. Pennsylvania R. Co.*, 320 U.S. 356, 360, 64 S.Ct. 128, 88 L.Ed. 96 (1943)). "In order to determine congressional intent, [this Court] must examine the purposes and policies underlying the limitation provision, the Act itself, and the remedial scheme developed for the enforcement of the rights given by the Act." *Id.* at 427, 85 S.Ct. 1050.

The purposes of the "one year time limitation [are] . . . to curtail [an] open-ended reconsideration process currently provided, and to eliminate frivolous or repetitious requests for review made years after the issuance of a decision which may well have been previously reviewed or subject to hearing and/or appeal." 20 C.F.R. 10.138. Clearly, determining whether a claim is frivolous or repetitious requires review of a complete record in which a claimant has been afforded adequate opportunity to present evidence on his or her own behalf. If, at the time of review, the claimant cannot possibly specify conditions of employment causing or aggravating his or her disability, a later filing that includes this information is neither frivolous nor repetitious. Moreover, this Court finds that the purposes of this limitations period are "outweighed . . . [because] the interests of justice require vindication of the plaintiff's rights." *Burnett v. New York Cent. R.R.*, 380 U.S. 424, 428, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965). Therefore, the purposes of the limitations period do not weigh against a finding that the limitations period should have been tolled in this instance.

The purpose of FECA is to provide federal employees injured in the performance of their duty comprehensive recovery that is quicker and more certain than can be obtained from tort suits. *See United States v. Demko*, 385 U.S. 149, 151, 87 S.Ct. 382, 17 L.Ed.2d 258 (1966); *see also United States v. Udy*, 381 F.2d 455 (10th Cir.1967) ("It is also fundamental that the provisions of the FECA should be liberally construed to effectuate [its] humane purposes . . . ."). It would be contrary to FECA's obvious design to deny a claimant his benefits when it is impossible for the claimant to show that his job was causally related to the injury or disease. This Court finds that under such circumstances not tolling the one-year limitations period would "do greater violence to the policies underlying the limitation provision and the Act[,]" *Burnett*, 380 U.S. at 433, 85 S.Ct. 1050, than would providing a mechanism for tolling the limitations period in very limited situations.

▮▮▮▮ Finally, the remedial scheme provided under FECA requires that the claimant satisfy the burden of showing a causal relationship between his job and his disability. FECA is the exclusive remedy against the United States for any federal employee whose injuries fall within the scope of the statute, and precludes recovery in another direct judicial proceeding. 5 U.S.C. § 8116(c). Accordingly, every opportunity to satisfy his burden should be afforded a claimant. Failing to toll the limitations period when a plaintiff has no meaningful opportuni-

---

**22.** Equitable tolling is different from equitable estoppel. While "the former focuses on the plaintiff's excusable ignorance of the limitations period" and the "lack of prejudice to the defen-dant," the latter "usually focuses on the actions of the defendant." *Naton v. Bank of Cal.*, 649 F.2d 691, 696 (9th Cir.1981).

ty to satisfy his burden of proof, in effect, would leave a claimant with no means of obtaining remedy.[23]

■ Because the limitations period could have and should have been tolled, the issue then becomes whether an added procedural measure will unduly burden the Government such that, even though warranted, the added measure would do more harm than good to the system as a whole. This Court suggests that, in circumstances where a claimant can show through probative medical evidence that he or she is unable to communicate through either written or verbal means, the OWCP must toll the one year limitations period for filing an appeal until such time as the claimant is able to communicate to the OWCP or to a representative the specific conditions of employment the claimant alleges either caused or aggravated his or her alleged disability as required under FECA regulations.[24] Since the record does not show specifically when Booker recovered his ability to communicate and this fact is material to the present controversy, cross motions for summary judgment are hereby DENIED

**23.** Defendants also advance an argument of statutory interpretation in analyzing FECA text. Defendants point to the fact that other FECA limitations periods are specifically tolled for incompetence while no such provision exists relative to an application for appeal. Defendants assert, therefore, that if Congress meant for a tolling provision to apply to the appeals application process, it would have specifically addressed the issue as it did for other limitations periods.

Defendants statutory analysis, however, is unavailing because " '[n]ot every silence is pregnant.' " *Burns v. United States,* 501 U.S. 129, 136, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991)(citing *State of Illinois Dept. of Public Aid v. Schweiker,* 707 F.2d 273, 277 (7th Cir.1983)). If a statute "interpreted literally, produces an absurd, and perhaps unconstitutional result[,][o]ur task is to give some alternative meaning [to the statute] . . . that avoids this consequence." *Green v. Bock Laundry Mach. Co.,* 490 U.S. 504, 527, 109 S.Ct. 1981, 104 L.Ed.2d 557 (1989)(Scalia, J., concurring in judgment); *see also Burns,* 501 U.S. at 137–38, 111 S.Ct. 2182 ("Notwithstanding the absence of express statutory language, this Court has readily construed statutes that authorize deprivations of liberty or property to require that the Government give affected individuals both notice and a meaningful opportunity to be heard.").

The critical issue, therefore, is whether the effect given Congressional silence in this instance would still ensure Jones–Booker a meaningful opportunity to be heard. This Court maintains that when an individual cannot communicate and the individual's communication is critical to meeting his burden of proof, it cannot be said that the individual has been given a meaningful opportunity to be heard. Furthermore, given Jones–Booker's inability to communicate, whether his disability technically should be considered a physical incapacity rather than a "mental" incompetence is a distinction without difference.

**24.** This holding is consistent with First Circuit decisions pertaining to tolling statutes of limitations for mental incapacity. *See Nunnally v. MacCausland,* 996 F.2d 1 (1st Cir.1993)(statute of limitations could be tolled because of mental illness); *Lopez v. Citibank,* 808 F.2d 905 (1st Cir.1987)(no absolute rule requiring tolling of statute of limitations where claimant is mentally impaired); and *Torres v. Secretary of Health, Ed. and Welfare,* 475 F.2d 466 (1st Cir.1973)(remanding to determine if impairment prevented timely pursuit of social security claim). Similar to the *Lopez* court, this court does not hold that there is an absolute right to tolling in all cases of incapacity. Rather, this Court maintains that, in order to have a constitutionally adequate procedure, when a claimant presents probative medical evidence (such as Dr. Amsterdam's report) showing that the claimant is unable to communicate in either verbal or written form, and the claimant's written or verbal testimony is necessary in order for the claimant to meet his or her burden of proof either for the benefits themselves or for an appeal, the OWCP limitations period must be tolled until such time as the claimant is able to communicate. Similar to the case sub judice, the *Nunnally* and *Torres* courts remanded to determine the extent of the impairment and the effect that impairment had on plaintiff's ability to make a proper and timely filing.

The parties are hereby advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has indicated that failure to comply with this rule shall preclude further appellate review. *See United States v. Valencia–Copete,* 792 F.2d 4 (1st Cir.1986); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega,* 678 F.2d 376, 378–79 (1st Cir.1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1st Cir. 1980); *see also Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

and this matter is hereby remanded to the OWCP for further administrative proceedings consistent with this opinion.

SO ORDERED.